Argued and submitted October 31, 1980, reversed January 5,
reconsideration denied February 19,
petition for review denied April 7, 1981 (290 Or 727)

**SPRINGER,**
*Respondent,*
*v.*
**STATE OF OREGON et al,**
*Defendants,*
**CITY OF PORTLAND,**
*Appellant.*

**(No. A7909-04459, CA 17275)**

621 P2d 1213

Thomas R. Williams, Deputy City Attorney, Portland, argued the cause for appellant. With him on the brief was Christopher P. Thomas, City Attorney, Portland.

Donald J. Friedman, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

RICHARDSON, P.J.

Buttler, J., dissenting opinion.

## RICHARDSON, P.J.

Plaintiff was arrested in April, 1979, by a Portland police officer for criminal mischief in the first degree, a class C felony. ORS 164.365. No accusatory instrument was filed against him. In September, 1979, plaintiff brought this suit against the State of Oregon and the City of Portland,[1] seeking the following relief (as described in his amended complaint):

"1. The entry of an order expunging the record of plaintiff's arrest and prosecution and other official records in his case, to the same extent as would be appropriate in an order sealing such records after the setting aside of a conviction under ORS 137.225.

"2. Such other and further relief as the court may deem appropriate.

"* * * * *."

The trial court granted plaintiff the general relief he sought and the city appeals.[2] We reverse.

ORS 137.225 provides generally that persons *convicted* of certain crimes, including class C felonies, who meet the prerequisites set forth in the statute, may apply to the court which entered the conviction for an order setting it aside. If the court determines that the conviction should be set aside, it is required to issue an order, *inter alia,* "sealing the record of conviction and other official records in the case, including the records of arrest * * *." ORS 137.225(3).

Plaintiff acknowledges that ORS 137.225 does not by its terms apply here because, among other things, plaintiff was not convicted. He argues, however, that the trial

---

[1] Multnomah County was added as a defendant through plaintiff's amended complaint.

[2] The parties and the court regarded this proceeding as equitable, and the city does not set out assignments of error. The state and city moved the trial court to strike all four counts of plaintiff's complaint. For purposes of appellate review, a motion to strike an entire complaint is the equivalent of a demurrer. After denying the motion to strike, the trial court directed the defendants to show cause why plaintiff should not be afforded the relief he sought. Thereafter, the trial court entered its decree. The defendants did not file answers as part of the unusual procedure followed below. The posture of the case on appeal is, essentially, that the defendant demurred unsuccessfully to the complaint and then declined or failed to plead further.

court had "inherent power" to seal his arrest record and to afford him other relief analogous to the remedies for convicted persons under ORS 137.225. Plaintiff contends that, if such relief is not available to persons who are arrested but not convicted while such relief is available to convicted persons, the former would be denied equal protection. Plaintiff also argues that the retention of his arrest records violates his right to privacy, is not justified by any legitimate public objective, and will or can result in a variety of personal and professional injuries.

The city argues that the Bureau of Criminal Identification of the Oregon State Police is required by ORS chapter 181 and by the Public Records Law (ORS 192.001 *et seq.*) to maintain the records plaintiff seeks to have expunged or sealed and that the courts have no power to direct the disposition of such non-judicial records except where specifically authorized to do so by statute. The city further contends that neither ORS 137.225 nor any other statute authorizes the courts to expunge or seal arrest records of persons not convicted of crimes; and that no rights of plaintiff are infringed by either the maintenance of his arrest record or the unavailability to him of a judicial remedy corresponding to the one ORS 137.225 provides convicted persons.

We note at the outset that, at least insofar as the facts alleged in plaintiff's amended complaint show, his suit is premature. He alleges:

"* * * * *

"On April 13, 1979, plaintiff was arrested within the City of Portland by a Portland police officer and apparently charged by the State of Oregon with the crime of criminal mischief in the first degree. He was transported to jail in a Portland police car and booked, photographed and fingerprinted in a detention facility operated by the County of Multnomah. He was released later that morning, only after a security deposit had been posted, and was ordered to appear in court on the morning of April 16, 1979.

"III

"Plaintiff appeared in court on April 16, 1979. At that time he was notified that no misdemeanor [sic] complaint

had been filed against him. His security deposit was ordered returned.

"\* \* \* \* \*."

He also alleges his innocence "of the crime for which he was arrested and of any crime"; that

"\* \* \* [h]ad he been convicted of the charge of criminal mischief in the first degree, arising out of his arrest on April 13, 1979, he would meet all the conditions for having his conviction set aside and arrest records expunged pursuant to ORS 135.225 [sic], except that there has not been a lapse of three years from the date of pronouncement of judgment";

and that "[t]he arrest was made for the purpose of harassing plaintiff and not in the good faith belief that he had committed a crime."

Nothing in the quoted allegations shows why plaintiff could not *now* be prosecuted for the crime for which he was arrested or for a lesser included misdemeanor. *See* ORS 131.125(2)(a) and (b). From the face of the complaint we can determine that the statute of limitations has not run on the charge for which plaintiff was arrested. Plaintiff's allegation of innocence is of course not triable in this civil proceeding, at least as long as the possibility of a criminal prosecution remains.

We do not suggest that plaintiff should, will or even *can* be prosecuted; however, his complaint does not allege facts from which the contrary follows as a matter of law. Even assuming that *any* person who has been arrested but not convicted could be entitled to the relief plaintiff seeks here, such relief surely cannot be afforded to a person who can still be prosecuted for the offense for which he was arrested. As far as the record before us indicates, plaintiff's position does not differ, for purposes of either the need for arrest data or the possibility of a criminal action being initiated, from that of a person who has just been arrested for a criminal charge.

Because the city does not contend that plaintiff lacks standing to raise it, we reach plaintiff's principal contention—that the maintenance and use of the arrest records of unconvicted persons is unlawful and can be

rectified judicially by expunction, sealing or ancillary relief. This and similar issues have been addressed by courts in several other jurisdictions in recent years. *See, generally,* Annotation, 46 ALR3d 900 (1972). Two examples of decisions from other jurisdictions will serve to illustrate the considerations which have been taken into account and the differing conclusions which have been reached by the courts.

In *Eddy v. Moore,* 5 Wash App 334, 487 P2d 211, 46 ALR3d 889, *rev den* 79 Wash 2d 1012 (1971), a woman against whom an assault charge was dismissed at trial brought a mandamus proceeding to compel the "return" of her fingerprints and a photograph which were taken following her arrest. The Washington statutes did not provide for return or destruction of such records upon acquittal or dismissal. The petitioner contended that the retention of the records violated her constitutional right to privacy. The Washington court agreed, stating:[3]

"* * * We have now reached the point where our experience with the requirements of a free society demands the existence of a right of privacy in the fingerprints and photographs of an accused who has been acquitted, to be at least placed in the balance, against the claim of the state for a need for their retention.

"We believe the right of an individual, absent a compelling showing of necessity by the government, to the return of his fingerprints and photographs, upon an acquittal, is a fundamental right implicit in the concept of ordered liberty and that it is as well within the penumbras of the specific guarantees of the Bill of Rights 'formed by emanations from those guarantees that help give them life and substance.' *Griswold v. Connecticut,* 381 U.S. 479, 484, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965).

"* * * * *

"The Washington statutes governing what is done with fingerprints and photographs upon acquittal of an accused are too limited in their scope. Their failure to provide for return of the fingerprints and photographs upon acquittal,

---

[3] The United States Supreme Court appears to have held in *Paul v. Davis,* 424 US 693, 96 S Ct 1155, 47 L Ed 2d 405 (1976), that the *federal* constitutional "right of privacy" does not prohibit the states from publicizing "a record of an official act such as an arrest." 424 US at 713. *Paul* was decided five years after *Eddy;* the Supreme Court's decision casts doubt on the continuing viability of most of the federal and state court cases on which plaintiff relies.

absent a compelling showing justifying their retention, is a constitutionally defective omission. * * *" (Footnote omitted.) 5 Wash App at 345-46.

Although the *Eddy* opinion indicates that the arrest records of acquitted persons may be retained if there is a "compelling showing justifying their retention," the opinion makes it clear that such a showing must be made on a case-by-case basis, and that there is a presumption that the retention of such records is not justified in particular cases.

In *Loder v. Municipal Court*, 17 Cal 3d 859, 132 Cal Rptr 464, 553 P2d 624 (1976), *cert den* 429 US 1109 (1977), the California Supreme Court also applied a "compelling interest" test in determining whether the retention of the arrest records of a person against whom charges had been dismissed was of sufficient public importance to outweigh the individual's privacy right under the California Constitution. However, the California court applied that test on a systemwide basis, rather than requiring case-by-case determinations of the kind required by *Eddy.*

The court held in *Loder* that the numerous uses of arrest data in the criminal investigative and dispositional processes, and as a vehicle for dealing with recidivism, provided the state with a "substantial governmental interest" in the retention of such records. 17 Cal 3d at 868. The court then weighed that interest against "the arrestee's legitimate concern to protect himself from improper uses of his record." 17 Cal 3d at 868. The state's interest was found to prevail, in light of California statutory safeguards against improper maintenance or use of arrest records. As catalogued by the court, these included: The classification of certain custodial actions which do not result in charges being brought as "detentions" rather than "arrests"; the requirement that disposition reports—including dismissals and acquittals—be made part of arrest records; guarantees of access to arrest records by the persons to whom they relate, to assure accuracy and completeness, with administrative recourse to correct erroneous information; provision for the sealing of certain arrest records, including those of acquitted adults where "it appears to the judge that [the

arrestee] was 'factually innocent'" (17 Cal 3d at 872);[4] "multiple safeguards" of confidentiality and limited use of records; and certain restrictions against job and licensing discrimination based upon a history of arrest.

After completing the foregoing recitation of statutory protections, the *Loder* court stated:

"We are mindful that some gaps in the structure may still appear. Thus plaintiff contends that the absence of a provision for expungement in his case is just such an oversight. But legislative history strongly suggests the omission was deliberate. In these circumstances we should defer to the implied determination of the lawmakers that the compelling state interests identified hereinabove outweigh the speculative significance of a dismissal 'for lack of prosecution,' a disposition which may be predicated on many grounds other than factual innocence.

"Indeed, even if the absence of an expungement provision in this connection were unintentional, we should nevertheless allow the Legislature to address in the first instance the difficult task of striking the proper balance between these competing concerns. There is no reason to believe that task will long go unfilled, as the Legislature has demonstrated a continuing desire and ability to fashion statutory responses to legitimate demands for privacy of the arrestee. In either event, therefore, judicial intervention is unwarranted." (Footnote omitted.) 17 Cal 3d at 876.

Many of the safeguards against improper use or maintenance of records enumerated in *Loder* also exist under the Oregon statutory and regulatory scheme: arrest records must contain disposition reports (ORS 181.511, 181.521); there are elaborate assurances of confidentiality and limitations on use (ORS 181.540; OAR 257-10-025); there are assurances of completeness and accuracy, and for challenge of the contents of records by the persons to whom they relate (ORS 181.540, 181.555; OAR 257-10-020; 257-10-035).[5]

---

[4] The "factual innocence" provision for sealing of records in California has no analog in Oregon statutes. However, it is noteworthy that the California provision applies *only* where the arrested person has been acquitted and where, in addition, the court affirmatively determines that the person was innocent.

[5] Indeed, the ability of individuals under OAR 257-10-035 to challenge the contents of records maintained by the Department of State Police (department)

■      Assuming that plaintiff and other unconvicted persons have any constitutionally protected privacy interest in their arrest records, we conclude, on the same rationale applied in *Loder,* that that interest is amply assured by statutory and regulatory safeguards.

There being no constitutional basis for relief, the next issue is whether Oregon statutes confer discretion on the courts to expunge or seal arrest records where no conviction follows from the arrest.

■   ·   ORS 137.225 is unambiguous in limiting its expunction remedies to convicted persons, and the statute therefore cannot be extended by implication. *See State v. Greer,* 26 Or App 605, 609, 553 P2d 1087 (1976); *State v. Thompson,* 20 Or App 61, 64, 530 P2d 532 (1975).

It is true that no statute expressly states that the courts *cannot* provide the remedy plaintiff seeks. However, extrinsic factors make it clear that the legislature intended the courts to have no such power. The very fact that ORS 137.225 applies only to convicted persons makes it unlikely the legislature intended for a corresponding judicial remedy to be available to unconvicted persons. Moreover, ORS 181.555 authorizes the Department of State Police to promulgate rules establishing administrative procedures "[f]or individual inspection and challenge of criminal record information relating to himself" and for expunging and purging of inaccurate or incomplete information;[6] hence, the legislature appears to have elected administrative rather than a judicial recourse for persons seeking to challenge the maintenance of arrest records. Although

---

may well be sufficiently comprehensive to constitute an exclusive administrative remedy, with the result that the trial court may not have had jurisdiction over this suit. *See School Dist. No. 48 v. Fair Dis. App. Bd.,* 14 Or App 35, 512 P2d 799 (1973). However, plaintiff alleges that data relating to his arrest is maintained by the FBI and the Columbia Region Information Sharing System (CRISS), as well as by the department. We are unable to determine from the pleadings and record whether the administrative remedy would apply to the data retained by CRISS and the FBI. The complaint does not describe any connections between the various information systems which may exist. Nor does it name CRISS as a defendant.

[6] ORS 181.555 provides:

"The department shall adopt rules under ORS 183.310 to 183.500 establishing procedures:

ORS 137.225 and other statutes, *e.g.,* ORS 419.800 *et seq.,* create judicial expunction procedures, with concomitant authority over records, such statutes are exceptions to the legislative placement of control over arrest records and jurisdiction over challenges to records under agency auspices. We conclude that Oregon statutes do not give courts the authority to expunge or seal arrest records in cases of the present kind.

■    Plaintiff argues, and the trial court agreed, that the courts have "inherent powers" to expunge or seal arrest

"(1) Limiting access to information to criminal justice and other state and local agencies when the information is required to perform a duty or function expressly required by statute;

"(2) For individual inspection and challenge of criminal record information relating to himself; and

"(3) Providing for purging or expunging of inaccurate and incomplete arrest, charge and disposition information."

OAR 257-10-035, adopted pursuant to ORS 181.555, provides as pertinent:

"(1) Any individual desiring to review information concerning himself maintained in the OSP Criminal Offender Record system, or who believes that the information as maintained is inaccurate, incomplete, or maintained in violation of any State or Federal statute or act, shall be entitled to review such information and obtain a copy thereof for the purpose of challenge or correction. The OSP shall not charge an individual for a reasonable request to provide him with a copy of Criminal Offender information which refers to him.

"* * * * *

"(4) All data included in the Criminal Offender information record is obtained from contributing Criminal Justice Agencies.

"If after review of the information concerning himself as maintained in such record, the individual believes that it is incomplete or incorrect in any respect and wishes changes, corrections, or updating of the alleged deficiency, he must make application directly to the contributor of the questioned information, requesting the appropriate agency to correct it in accordance with its respective administrative rules and procedures. Upon receipt of an official communication directly from the agency which contributed the original information, the OSP will make any changes necessary in accordance with the information supplied by the agency.

"(5) Any individual whose record is not removed, modified, or corrected as he may request, following refusal by the agency originally contributing such information, may proceed under the provisions of Rules 30.00 to 30.80 of the Attorney General's Model Rules of Practice and Procedures under the Administrative Procedure Act, relating to contested cases and judicial review.

"After conclusion of such procedure or review, any information found to be inaccurate, incomplete, or improperly maintained, shall be removed from the individual's record and the originating agency so notified with copy of the record as corrected being furnished to the challenging individual.

"* * * * *."

records in cases not reached by ORS 137.225 or other statutes which expressly confer such authority. We do not perceive why a court's power to provide this particular relief is any more necessary to its ability to perform the judicial function *(see Ortwein v. Schwab,* 262 Or 375, 498 P2d 757 (1972), *aff'd* 410 US 656, 93 S Ct 1172, 35 L Ed 2d 572 (1973)), than is its ability to afford other kinds of relief which are beyond its jurisdiction or powers *(e.g.,* reviewing arbitration awards on grounds not specified in ORS 33.320). In any event, the inherent powers issue strikes us as a red herring. The questions in this case are, essentially, whether applicable statutes provide for the existence of arrest records for persons in plaintiff's circumstance (which question does not appear to be seriously disputed); whether the statutes permit a judicial remedy if records are wrongfully or improperly maintained; and, depending on the answers to the other questions, whether the maintenance of the records or the absence of a judicial remedy deprives plaintiff of constitutional rights. A court's ability to answer such questions does not depend on the doctrine of inherent powers, except in the unlikely event the court concluded that, despite the fact that the existence of the records is statutorily authorized, that the courts are precluded by statute from intervening in the record-maintenance process; and that no constitutional rights are violated by the statutes, the court will nevertheless intervene in the record-maintenance process.

█      Plaintiff contends that the availability of the expunction and sealing remedy for certain convicted persons under ORS 137.225, while no comparable remedy is provided for unconvicted persons, deprives the latter of equal protection. However, rational bases for treating the two classes dissimilarly are readily discernible. The principal purpose of ORS 137.225 is "to clear the record of those persons convicted of any of the enumerated offenses who have demonstrated their ability to be responsible citizens" and to enable them to "bury the past." *State v. Hammond,* 34 Or App 893, 897, 580 P2d 556 (1978). The principal relief under the statute is the setting aside of convictions; the sealing of arrest records *which include disposition reports showing the convictions* is ancillary to that principal relief. In the case of an arrested person who was not

convicted, the arrest record itself will contain a disposition report showing the absence of a conviction. It may be true that not everyone in our society finds the distinction between an arrest and a conviction to be as meaningful as the law regards the distinction to be; however, the legislature was entitled to draw a line based on the distinction. *Cf. State v. Thompson, supra,* 20 Or App at 64-65.

■ We reject plaintiff's equal protection argument, as we have his other arguments, and we hold that he is entitled to no relief in this suit. The question we have decided is whether plaintiff or other unconvicted arrestees enjoy a right, constitutional or statutory, which enables them to obtain a judicial order eliminating or restricting the *regular* maintenance and use of arrest records in accordance with ORS 181.511 *et seq.* and comparable sources of authority. This opinion should not be understood to suggest that the courts are powerless to restrain the maintenance or use of information under circumstances or in ways which offend constitutional requirements. *Cf. Itzkovitch v. Whitaker,* 115 La 479, 39 So 499 (1905).

Reversed.

**BUTTLER, J.,** dissenting.

Because I am unable to perceive any *rational* basis for the legislature's permitting one convicted of criminal mischief in the first degree to expunge his record, but denying the right of expunction to one who is merely arrested, but not formally charged (and thus not convicted), for the same offense, I would affirm the trial court's order directing the expunction of plaintiff's arrest record. Unless ORS 137.225 is so construed, it suffers from constitutional infirmity by denying to plaintiff the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 20 of the Oregon Constitution.

The majority devotes approximately three-quarters of its opinion to deciding that courts do not have inherent authority to expunge or seal criminal records, and after concluding that they do not, states that the issue "strikes us as a red herring." 50 Or App at 15. It then devotes two paragraphs to disposing of the equal protection

problem, which, in my judgment, is the real issue in the case.

I agree with the majority that no one has a constitutional right to rewrite history by having criminal records expunged or sealed. The wisdom of permitting such relief is for the legislature. However, once the legislature has decided to permit it in particular cases, there must be a rational basis for permitting it in one case and not in another. We have, for example, held that the legislature may allow expunction of "what have been treated by legislation as less serious offenses, while denying it for those which have been treated as more serious." *State v. Thompson,* 20 Or App 61, 65, 530 P2d 532 (1975).

On the other hand, we have held that even though the statute does not permit expunction of convictions subsequently held invalid, the convicted person is entitled to have the record of the convictions, and the arrest relating thereto, expunged. *State v. Hammond,* 34 Or App 893, 580 P2d 556 (1978). There was less reason in *Hammond* to allow expunction than there is here: *Hammond* had admitted his guilt to three serious offenses under a statute (ORS 167.210) subsequently held unconstitutional, and had not shown that his behavior since the date of conviction warranted expunction. (ORS 137.225(3)). Here, the plaintiff has neither admitted his guilt nor has it been established that he committed the wrong of which he was suspected. Further, the statute expressly includes expunction of the arrest records relating to the subsequent conviction; it does not include expunction of invalid convictions.

How can it be said that there is a rational basis for permitting expunction of the arrest record of one subsequently convicted of the offense for which he or she was arrested, but not permitting expunction of the arrest record of one not so convicted?

The majority rests its decision on the proposition that there is a distinction between a conviction and an arrest. In doing so, it minimizes the fact that when the conviction is expunged, the arrest record is expunged along with it. To point out that there is a difference between an arrest and a conviction is to belabor the obvious: a conviction establishes beyond a reasonable doubt that the person

convicted committed a specified offense against the state; an arrest simply means that an officer had probable cause to believe that the arrestee committed certain acts. An officer may have probable cause to arrest any number of persons for a crime known to have been committed by only one person. That distinction does not demonstrate a rational basis for treating one whose wrong has been established beyond a reasonable doubt more favorably than one who has only been suspected of committing the same wrong. The only *rational* basis for treating one more favorably than the other militates in favor of permitting expunction of the arrest record rather than the conviction. The legislature has done the opposite, and what the majority holds the statute does is analogous to requiring affirmative action programs favoring white male Anglo-Saxon protestants.

It is not our function to pass on the advisability of expunction; it is, however, our duty to see that where the legislature has permitted expunction in certain circumstances, the remedy be available on an equal basis in the absence of a rational premise for granting it to one, but not the other. The majority does not dispose of this question persuasively; rather its rationale would require the arrest record to stand, with a notation that the conviction was expunged, whenever expunction of the conviction is ordered. If that were the legislative mandate, which it is not, the equal protection problem would be obviated.

In the context of this case, I would hold that ORS 137.225 denies plaintiff the equal protection of the laws unless it requires the expunction of his arrest record. Accordingly, I respectfully dissent.