William J. JOURNEY, Appellant,

v.

STATE of Alaska, Appellee.

STATE of Alaska, Petitioner,

v.

David JEFFERSON, Respondent.

Nos. A–4018, A–4076.

Court of Appeals of Alaska.

April 23, 1993.

Paul Canarsky, Asst. Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for appellant.

Kenneth M. Rosenstein, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

In these consolidated cases we are asked to consider the circumstances under which

---

**1.** AS 12.55.085(e) provides that when a person successfully completes probation after receiving a suspended imposition of sentence, "the court may set aside the conviction and issue to the person a certificate to that effect."

courts may order criminal records expunged.

## FACTS

### 1. *Journey*

William Journey was convicted of disorderly conduct after pleading no contest to the charge; he received a suspended imposition of sentence and was placed on probation. After successfully completing his probation, Journey moved to have his conviction set aside in accordance with the provisions of AS 12.55.085(e).[1]

At the evidentiary hearing on his motion, Journey requested District Court Judge Charles Pengilly to expunge all records relating to his arrest and conviction. Journey asserted that he had originally understood that his record would be expunged upon completion of the suspended imposition of sentence; Journey testified that he had been hampered in attempting to secure employment because of his arrest record. Judge Pengilly set aside Journey's conviction but declined to order his record expunged. The judge concluded that the suspended imposition of sentence statute did not expressly authorize the court to order Journey's record expunged and that the court had no inherent authority to issue such an order. Journey then appealed.

### 2. *Jefferson*

David Jefferson was charged with misconduct involving a controlled substance in the third degree for selling a small quantity of cocaine to an undercover agent. He moved to suppress the evidence against him, arguing that the undercover agent's surreptitious electronic monitoring of the transaction had violated the requirements of *State v. Glass.*[2] After Jefferson prevailed on his suppression motion, the state dismissed the charge.

---

**2.** *State v. Glass,* 583 P.2d 872, 881 (Alaska 1978), *aff'd on reh'g,* 596 P.2d 10 (1979).

More than two years later, Jefferson moved to expunge all records relating to the arrest and charge. At an evidentiary hearing, he testified that his arrest record had hampered his efforts to secure employment.

In addressing Jefferson's motion to expunge, Superior Court Judge Mary E. Greene initially determined that sentencing courts have inherent authority "to take action to remove materials from a person's criminal record, and I don't think there's any separation of powers problem." The judge next found that computer-generated arrest records can work hardship and unfairness because they are confusing and potentially misleading when interpreted by employers and other members of the public.

Thus, in Judge Greene's view, the central question in Jefferson's case was: "When does it become so unfair that the court should exercise [its] inherent power?" In answer to this question, the judge reasoned that, because Jefferson's case had been dismissed as the result of a violation of his constitutional rights, it was "an appropriate case to expunge the arrest record for the dangerous drugs in so far as law enforcement and the public are concerned."

The state petitioned this court to review Judge Greene's decision. We granted the petition and ordered Jefferson's case consolidated with Journey's appeal.

## DISCUSSION

The issue presented in these cases is one of first impression for Alaska. In their briefing on the issue, the parties agree that no Alaska statute, rule, or judicial decision expressly vests sentencing courts with the power to expunge criminal records; nor is the exercise of such power expressly prohibited. For this reason, the parties concentrate their arguments on inherent judicial authority to order records expunged.

■ In our view, however, this case requires no definitive resolution of the inherent authority issue. Even assuming that Alaska courts have inherent power to order criminal records expunged, we believe that this power could not properly be exercised in Journey's or Jefferson's case.

Decisions dealing with various forms of request to expunge criminal records are plentiful and reach diverse results.[3] In states whose statutes do not expressly grant the power, a few courts have flatly declined to find inherent judicial authority to expunge criminal records, deeming the subject to fall within the sole province of the legislative and executive branches. *See, e.g., State v. Gilkinson*, 57 Wash.App. 861, 790 P.2d 1247 (1990); *Billis v. State*, 800 P.2d 401 (Wyo.1990). *But see Eddy v. Moore*, 5 Wash.App. 334, 487 P.2d 211 (1971).

Many courts, however, have tended toward a more flexible approach, finding power to expunge when a constitutional right of the arrestee (typically the right to privacy) is shown to outweigh the public's interest in retaining the disputed records. *See, e.g., Davidson v. Dill*, 180 Colo. 123, 503 P.2d 157 (1972) (en banc).[4]

Other courts have deemed this balancing approach unnecessary, finding that existing statutory or regulatory provisions restricting the use and dissemination of criminal records adequately protected the right to privacy. *See, e.g., Loder v. Municipal Court*, 17 Cal.3d 859, 132 Cal.Rptr. 464, 553 P.2d 624 (1976). Courts in this category have nevertheless acknowledged inher-

---

**3.** For a voluminous review of cases on the subject, see Vitauts M. Gulbis, Annotation, *Judicial Expunction of Criminal Record of Convicted Adult*, 11 A.L.R.4th 956 (1982); Deborah Sprenger, Annotation, *Expunction of Federal Arrest Records in Absence of Conviction*, 97 A.L.R.Fed. 652 (1990); and Gary D. Spivey, Annotation, *Right of Exonerated Arrestee to Have Fingerprints, Photographs, or Other Criminal Identification or Arrest Records Expunged or Restricted*, 46 A.L.R.3d 900 (1972).

**4.** The court in *Davidson v. Dill* adopted the following balancing test:

> [A] court should expunge an arrest record or order its return when the harm to the individual's right of privacy or dangers of unwarranted adverse consequences outweigh the public interest in retaining the records in police files.

180 Colo. 123, 503 P.2d 157, 161 (1972) (en banc).

ent authority to expunge records in exceptional cases, when necessary to prevent or avoid constitutional violations. *See, e.g., Springer v. State,* 50 Or.App. 5, 621 P.2d 1213, 1219 (1981).

Federal courts have uniformly claimed inherent power to expunge criminal records, but have tempered their claim with the recognition that this power should only be used to preserve basic legal rights in extraordinary circumstances.[5] These courts have consistently proclaimed that the power to expunge is "a narrow one, [which] should not be routinely used whenever a criminal prosecution ends in acquittal, but should be reserved for the unusual or extreme case." *United States v. Linn,* 513 F.2d 925, 927 (10th Cir.1975).

The types of exceptional circumstances in which the federal courts have found it appropriate to expunge records have included the case of an arrest that was made solely on the basis of the arrestee's status, *see Sullivan v. Murphy,* 478 F.2d 938, 968–69 (D.C.Cir.1973), an arrest that was made under an unconstitutional statute, *see Kowall v. United States,* 53 F.R.D. 211, 213–14 (W.D.Mich.1971), arrests that were made for the purpose of harassment or intimidation, or that resulted from entrapment, *see United States v. McLeod,* 385 F.2d 734, 750 (5th Cir.1967), and a purported arrest that was shown never to have actually been made, *see Menard v. Saxbe,* 498 F.2d 1017, 1019 (D.C.Cir.1974).

Few of the decisions finding inherent authority to order records expunged pinpoint the source from which this power arises. On the whole, they suggest that the power to expunge inheres either in the court's expressly conferred authority to preside over trials and sentencings in criminal cases or in its traditional role as enforcer of constitutional guarantees.

No matter what theoretical source of power they base their decisions on, however, courts finding inherent judicial authori-

ty to expunge criminal records make it clear that this power—arising, as does all inherent judicial authority, from necessity—should be sparingly used. Notably, no court has seriously questioned the legitimacy or importance of the government's interest in obtaining and retaining records dealing with individuals who pass through our criminal justice system; none has viewed inherent judicial authority to expunge as a power to be used routinely; and none has suggested that the government's interest in maintaining accurate criminal histories can be outweighed by an individual's right to privacy in any but exceptional circumstances.

 For present purposes it is sufficient to observe that neither Journey's nor Jefferson's case presents the type of exceptional circumstances that could conceivably warrant a discretionary exercise of inherent judicial authority to expunge. This conclusion follows regardless of whether we analyze Journey's and Jefferson's cases on the assumption that inherent authority to expunge emanates from the trial court's statutory jurisdiction to hear criminal cases or from its duty to enforce constitutional guarantees.

We turn first to the issue of whether an order to expunge might have been justified in Journey's and Jefferson's cases by inherent authority arising from the trial court's general power to preside over criminal cases.

Journey was convicted of disorderly conduct after pleading no contest to the charge. Although Journey received a suspended imposition of sentence and had his conviction set aside after he successfully completed his assigned period of probation, he has never established his factual innocence or formally challenged the validity of the conviction or the legitimacy of the underlying arrest.

**5.** *See, e.g., United States v. Schnitzer,* 567 F.2d 536, 538 (2d Cir.1977), *cert. denied,* 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978); *Morrow v. District of Columbia,* 417 F.2d 728, 740 (D.C.Cir. 1969); *United States v. Linn,* 513 F.2d 925, 927 (10th Cir.1975); *Menard v. Saxbe,* 498 F.2d 1017, 1023 (D.C.Cir.1974); *United States v. McMains,* 540 F.2d 387, 389 (8th Cir.1976); *Natwig v. Webster,* 562 F.Supp. 225, 227 (D.R.I. 1983); *United States v. Bohr,* 406 F.Supp. 1218, 1219 (E.D.Wisc.1976).

Journey asserted below that he expected his criminal record to be expunged when he completed his probation. But this expectation was evidently neither engendered nor fostered by the state; it reflects, at most, Journey's misunderstanding of the suspended imposition of sentence statute, which offers no such relief. If Journey believed that he entered an uninformed plea of no contest based on his mistaken understanding of the law, he could have requested that his plea be withdrawn. His mistaken expectation afforded him no basis for an order expunging his record.

Jefferson stands on somewhat different footing than Journey. Jefferson was never convicted; his charge was dismissed after the superior court found that the state had obtained evidence in violation of the limitations of a *Glass* warrant. Nevertheless, the primary purpose of the exclusionary rule that mandated the dismissal of Jefferson's case—deterrence of unlawful police conduct—was wholly unrelated to the fairness of the prosecution. The dismissal implicated neither the validity of the substantive information upon which Jefferson's charge was brought nor the fundamental fairness of the charges against him. *Cf. Moreau v. State*, 588 P.2d 275, 280 (Alaska 1978).

While the deterrent purpose of the exclusionary rule justified the suppression order that led to dismissal, the same rationale cannot justify an order expunging Jefferson's arrest record, since the incremental effect of the additional sanction would at most be negligible. *Cf. Waring v. State*, 670 P.2d 357, 362 (Alaska 1983). Nor does the constitutional violation in Jefferson's case involve the type of flagrant, shocking, or deliberate misconduct that might require corrective measures beyond the usual remedy of suppression. *Id.* at 362–63. In similar situations, courts holding themselves inherently empowered to expunge criminal records have recognized that an order to expunge cannot be justified. *See United States v. Bagley*, 899 F.2d 707, 708 (8th Cir.1990).

In short, whatever inherent authority to expunge criminal records Alaska courts might possess by virtue of their expressly granted powers to preside over criminal cases, invocation of that authority would have amounted to an abuse of discretion in the specific circumstances of Journey's and Jefferson's cases.

We turn next to the question of whether the court's inherent power to enforce constitutional guarantees might have justified ordering Journey's or Jefferson's record expunged.

Journey and Jefferson insist that the issuance of orders to expunge in their cases can be justified by the need to enforce the Alaska Constitution's guarantees of liberty, privacy, and due process of law.[6] They allege that they have encountered difficulty with potential employers who had access to their arrest records. Both also assert that the records are potentially misleading, and they complain that, under Alaska law, no procedures have been enacted to protect them against inaccuracy or against the inappropriate dissemination of their records.

Citing *State Department of Revenue v. Oliver*, 636 P.2d 1156, 1167 (Alaska 1981), Journey and Jefferson maintain that the state must shoulder the burden of showing a compelling interest in the retention of criminal records that outweighs the harm they have suffered. We find this argument unpersuasive in its current context.

*Oliver* established a balancing test for enforcement of the right to privacy in the context of a governmental effort to obtain information from potential taxpayers to determine their liability under the Alaska's income tax laws. The taxpayers' case dis-

---

**6.** Article 1, section 1 of the Alaska Constitution guarantees "that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry[.]"

Article 1, section 22 of the Alaska Constitution provides that the "right of the people to privacy is recognized and shall not be infringed."

Article 1, section 7 of the Alaska Constitution states:
No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative or executive investigations shall not be infringed.

puted the government's authority to obtain the information, which was exclusively in their possession in the form of financial records and other personal documents.

By contrast, in the present case, the propriety of the state's having initially obtained and retained information relating to Journey's and Jefferson's criminal histories is undisputed and, we think, indisputable. Journey and Jefferson have cited no precedent questioning—on constitutional grounds or otherwise—the state's authority to obtain and retain information relating to individuals lawfully brought before the courts to answer to criminal charges. Indeed, the complaints Journey and Jefferson voice relate not to the obtaining or retention of such information, but rather to its potential misuse and unwarranted dissemination.

■ It is of course readily conceivable that actual or potential misuse of criminal records could, in some cases, pose a sufficient threat to the constitutional guarantees of liberty, privacy, or due process to require intervention by the courts, either on behalf of an individual or a class of individuals. It is also arguable that, under certain circumstances, an order expunging criminal records might be appropriate to prevent or remedy a violation of these rights, even though the disputed records were properly obtained and retained in the first instance.[7]

However, in such cases, because the need to avoid or remedy a constitutional violation is the source of the court's power to expunge, no order expunging records would be justified absent proof that a constitutional violation had actually occurred or was threatened. Moreover, even upon proof of a past or imminent constitutional violation, an order to expunge would be justified only upon a further showing that less drastic remedies—such as limiting, regulating, or enjoining misuse or improper dissemination of the disputed criminal records—could not cure or prevent the threatened harm.

Neither Journey nor Jefferson made any such showings. At most, they advanced speculative testimony, based on supposition or hearsay, suggesting possible misuse or unwarranted dissemination of their criminal records.

In any event, the proper forum for cases like the present ones—which advance claims of misuse or inappropriate dissemination of criminal records but do not call into question the validity of the original prosecution or the legitimacy of the state's right to obtain the disputed information in the first instance—would appear to be a separate civil action against the state. Even assuming the existence of inherent judicial power to expunge as a remedy for a claimed constitutional violation stemming from misuse or inappropriate dissemination of criminal records, it is entirely unclear, as a procedural and jurisdictional matter, how such a claim could be properly raised and entertained in the procedural context of a previously-filed criminal case—especially a closed criminal case.

Beyond questions of procedure and jurisdiction, sound policy, too, would appear to dictate requiring the assertion of such a claim in a separate civil action—a more formal and structured procedural setting in which the respective burdens of the parties are clearly defined, all relevant factual and legal issues can be fully developed and explored, and a wide array of potential remedies will be available to the court.

## CONCLUSION

In the present cases, we conclude that Judge Pengilly did not err in denying Journey's request to expunge his criminal record. We further conclude that Judge Greene erred in ordering Jefferson's record expunged. Accordingly, the court's order as to Journey is AFFIRMED; the court's order as to Jefferson is REVERSED.

---

7. *Cf. Davidson v. Dill,* 180 Colo. 123, 503 P.2d 157, 159, 161 (1972) (espousing a balancing test for a situation involving an individual who had been arrested for and was subsequently acquitted of loitering).