V.C., APPELLANT, V. THOMAS K. CASADY, CHIEF OF POLICE, CITY OF LINCOLN, NEBRASKA, POLICE DEPARTMENT, AND DON LEUENBERGER, DIRECTOR, NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES, APPELLEES.

634 N.W.2d 798

Filed October 26, 2001. No. S-99-1435.

John E. Beltzer, of DeCamp Legal Services, P.C., for appellant.

Dana W. Roper, Lincoln City Attorney, and Connor L. Reuter for appellee Thomas K. Casady.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

V.C., the appellant, sued Thomas K. Casady, chief of the Lincoln Police Department (LPD), and Don Leuenberger, director of the Nebraska Department of Health and Human Services (DHHS), seeking an order directing Casady and Leuenberger to expunge any record of an LPD investigation into an allegation that the appellant had sexually molested a child, C.C., who was then 9 years old. The district court determined that it had jurisdiction to issue such an order, but that the appellant was not entitled to relief. The appellant filed this appeal.

## FACTUAL BACKGROUND

### POLICE INVESTIGATION

On May 23, 1996, a police officer with the LPD generated an incident report based on information provided to him by C.C.'s mother and by a Lincoln attorney. The police officer was first called by the attorney, who was representing the mother in a

custody dispute with C.C.'s father. The attorney reported that the mother thought that C.C. might have been sexually abused by the appellant, a friend of the father's. The police officer later received a telephone call from the mother and proceeded to investigate.

As part of his investigation, the police officer interviewed C.C. at C.C.'s school. The police officer also spoke to the counselor at C.C.'s school and reviewed a deposition of the father that had been in the possession of the mother's attorney. The police officer then dictated a supplemental investigation report. The police officer concluded that there was no evidence of a sexual assault. Since there was no evidence of a crime, no charges were filed.

Briefly summarized, the police officer's supplementary investigation report states that while there was no evidence that the appellant had abused C.C., the police officer did find the appellant's relationship with the child to be peculiar and inappropriate and expressed these concerns to C.C. and the father. The report recounts the mother's explanation of the situation to the police officer as follows: The mother had been employed in the appellant's office, and the appellant became acquainted with C.C. when the mother brought C.C. to work. The appellant became C.C.'s godfather and became extremely involved in C.C.'s life. The mother became concerned and began restricting the appellant's contact with C.C. The mother then left the appellant's employment. According to the police officer's recitation of the mother's statements, the appellant then befriended the father and provided the father with substantial financial support in exchange for being permitted to spend time with C.C.

### LPD RECORDKEEPING PROCEDURES

Casady testified regarding the LPD's retention and use of police reports. Generally, Casady drew a distinction between incident reports and investigation reports.

Incident reports are maintained as both a hard copy of a written report and as an electronic record containing some of the information on the officer's written report. Incident reports contain the name of the victim, but not the name of any suspects. The incident report in this case, contained in exhibit 3, identifies only C.C. as the victim and the LPD officer who prepared the report.

The electronic incident report records are accessible to the LPD's police officers and civilian employees who have been determined to need access to those records in the course of their duties. Police incident reports are public records, available to the general public upon request. In addition, the FBI is provided with and maintains records of code numbers, the nature of the event, and the date of each incident report for the purpose of compiling national crime statistics, but the FBI does not have access to the report and is not given any identifying information.

A supplementary investigation report is a narrative report about any case or information that an officer cares to prepare. Such a report names all the persons involved in the case, including suspects. These reports are electronic records and are not regularly kept as hard copies. They may be accessed by the LPD's police officers and civilian employees who need to access them. Case investigation reports and additional case investigation reports are maintained as hard copies, and not as electronic records. They include names and details of the investigation.

Investigation reports are not available to the general public, including victims, without a subpoena or a court order. Governmental officials or agencies charged with criminal investigatory responsibilities may be provided with copies of such reports upon request. Such officials or agencies include federal law enforcement agencies, courts, probation officers, probation departments in Nebraska, and DHHS in child abuse and neglect investigations. Military agencies charged by law with criminal investigative responsibility, such as the Naval Investigative Service, might also access investigation reports. Federal civil service personnel, however, would not be able to get copies of investigation reports.

The LPD has extensive rules and regulations about the distribution of information that are rigorously enforced. Reports are kept in a secure area and, when discarded, are securely recycled and destroyed.

Casady also testified at length regarding the utility of such records to the LPD. Casady stated that the reports document the LPD's investigation in the event that questions arise about whether an investigation has been handled properly; for instance, Casady noted that police investigations sometimes result in litigation.

Casady also stated that the reports preserve a record of the investigation in case allegations are made in the future, either by C.C. or against the appellant. Casady also testified that the reports would provide documentation if C.C. was ever convicted of a crime and his childhood history was a relevant issue in sentencing.

Casady stated that if anyone ever wanted testimony from the investigating police officer or anyone else at the LPD regarding the investigation, the police reports would provide the only record. Casady also testified that the reports help him to provide oversight to ensure competent investigations, noting that there is occasionally a need to investigate the death of a child regarding whom there have been previous reports or referrals. Casady testified that in his opinion, there is a valid place in police reports for clearly noted opinions.

Casady admitted that if there was some way of guaranteeing that nothing would ever come up in the future that would involve this case, then the police reports would have no continuing utility.

## PROCEDURAL BACKGROUND

The appellant filed an "Amended Petition in Equity" against Casady, alleging that the LPD reports on file were untrue and injurious to his reputation. The appellant sought to require Casady to deliver to him all of the LPD documents and records in the case. The appellant also asked the district court to order Casady to purge the LPD records and to identify all the persons who had been informed of the records. The appellant's petition also named Leuenberger and the Lancaster County Attorney as parties and sought to compel those parties to purge their records as well.

The district court subsequently sustained a demurrer by the Lancaster County Attorney and dismissed him from the case. The district court overruled demurrers filed by Casady and Leuenberger, concluding that the district court had the power to act in equity even in the absence of legislative authority. The court ruled, however, that trial was to be limited to the records themselves, concluding that since the relevant issue was the harm that could be done by the records, any attempt to attack the veracity of the records was irrelevant.

At trial, the appellant made several offers of proof regarding evidence that was intended to undermine the credibility of the

facts and conclusions stated in the police reports. A lawyer, who defended the appellant with respect to charges made by the mother in a separate civil proceeding, would have testified that the mother's attorney told this lawyer that if the appellant stopped helping the father in his custody proceeding, another civil action brought by the mother against the appellant would "go away." This testimony was excluded as irrelevant.

A licensed clinical psychologist would have testified that he had met with and assessed the appellant to determine if there was evidence of pedophilic tendencies. The psychologist would have testified that he reviewed the police report and concluded that there was no evidence that the appellant had pedophilic tendencies. Casady's relevance objection was sustained.

C.C.'s father would have testified about his contact with the LPD investigating officer and the events of the investigation. The appellant would have testified about his relationship with C.C. and why the appellant took the interest in C.C. that he did. Relevance objections were sustained to this proffered testimony. Attempts to attack the accuracy of statements in the reports were also made during the investigating officer's testimony, but Casady's objection was sustained, and the testimony was stricken. In addition, the district court excluded the deposition of an employee of the appellant and the deposition of the mother, which the appellant offered to further attack the substance of the police reports.

The appellant was permitted to testify at trial regarding the potential harm to him of the continued existence of the reports. The appellant recalled that he was required, on application to another state's bar, to have police records sent to the other state's bar association. The appellant also testified that he has on several occasions obtained security clearances: twice when working as an electrical engineer in the missile industry, again as a civilian employee of the Navy, and also when performing a foreign patent application for the Army. The appellant testified that police records were obtained by the FBI in making those checks. The appellant also testified that he had recently obtained an application to the Big Brother program that required him to sign a release authorizing the program to obtain police records. The appellant testified, "I'm always afraid that that matter will

be resurrected and used against me, although I think that it wasn't meritorious at all."

During trial, at the close of the plaintiff's evidence, the district court entered what it referred to as a directed verdict in favor of Casady and Leuenberger and dismissed the case. The district court found that the evidence failed to establish that the continued existence of the reports carried a potential harm to the appellant. The undisputed evidence, according to the district court, was that the reports were released only through legal process and that the appellant had proved only the legitimate need to maintain such records. V.C. appeals.

## ASSIGNMENTS OF ERROR

The appellant assigns that it was error for the trial court to (1) find that the LPD and DHHS have a legitimate need to retain the reports sought to be expunged; (2) fail to find harm or potential harm to the appellant's basic legal interests; and (3) exclude evidence relevant and material to a determination of the competence, reliability, and accuracy of the investigation that provides the basis for the generation of the records.

Casady has also filed a "Suggestion of Mootness" with this court. See *ProData Computer Servs. v. Ponec*, 256 Neb. 228, 590 N.W.2d 176 (1999). Casady argues that because of this proceeding and others, and due in part to the appellant's own actions, the content of the police reports has already been made a part of the public record. We have considered Casady's argument that this fact renders the instant appeal moot, and we find the argument to be without merit.

## STANDARD OF REVIEW

On appeal from an order of a trial court dismissing an action at the close of the plaintiff's evidence, an appellate court must accept the plaintiff's evidence as true, together with reasonable conclusions deducible from that evidence. *Klundt v. Karr*, 261 Neb. 577, 624 N.W.2d 30 (2001); *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska

Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Genetti v. Caterpillar, Inc.*, 261 Neb. 98, 621 N.W.2d 529 (2001); *Nickell v. Russell*, 260 Neb. 1, 614 N.W.2d 349 (2000). Because the exercise of judicial discretion is implicit in determinations of relevancy and admissibility under Neb. Rev. Stat. § 27-401 (Reissue 1995), the trial court's decision will not be reversed absent an abuse of discretion. *Genetti, supra.* An erroneous exclusion of evidence is reversible only if the complaining litigant was prejudiced by the exclusion of such evidence. *Nickell, supra.*

## ANALYSIS

We first address that portion of the district court's judgment that dismissed the appellant's claim against Leuenberger. While the appellant alleged that copies of the police reports at issue had been provided to DHHS and were maintained in DHHS' records, there was no evidence at trial to substantiate the allegation that DHHS had maintained copies of any of the reports that the appellant sought to have expunged.

Moreover, to the extent that the appellant's petition addresses information maintained in the Abused or Neglected Child Registry, there is a statutory remedy available that allows for the expunction of such information, but there is no indication in the record that the appellant followed the statutory procedure. See, generally, *Benitez v. Rasmussen*, 261 Neb. 806, 626 N.W.2d 209 (2001). Where a statute provides an adequate remedy at law, equity will not entertain jurisdiction, and the statutory remedy must be exhausted before one may resort to equity. See *Genetti, supra.*

Given the failure of the record to establish that the appellant pursued an available statutory remedy, or to establish even that DHHS maintained copies of the reports that the appellant sought to have expunged, we conclude that the district court did not err in dismissing the appellant's claims against Leuenberger. However, the statutes providing for expunction of criminal history record information, as maintained by the LPD, do not include investigative information such as the reports at issue in this case. See Neb. Rev. Stat. §§ 29-3506 (Reissue 1995) and 29-3523 (Cum. Supp. 2000). There is, therefore, no statutory procedure

that applies to the police reports that the record reflects are maintained by the LPD, and we proceed to consider the appellant's assignments of error as they relate to his claims against Casady.

## DENIAL OF RELIEF

We turn first to the issue whether the district court erred when it dismissed the appellant's cause of action and denied the relief he requested. The appellant's first two assignments of error are essentially addressed to the appellant's claim that he proved his entitlement to the relief requested. Underlying the issue, however, are the more fundamental questions whether, and under what circumstances, the equitable remedy of expunction is within the jurisdiction of the district court.

■ Juridically, jurisdiction of a court of equity refers to two distinct concepts: (1) the power of a court to render a valid decree and (2) the propriety of granting the relief sought. *Doe v. Comdr., Wheaton Police Dep't*, 273 Md. 262, 329 A.2d 35 (1974). Assuming, arguendo, that expunction is available as an equitable remedy, the first question is under what circumstances the power of a court to expunge may be invoked.

Most of the reported cases that address the propriety of expunction as an equitable remedy have done so in the context of arrest records, rather than police reports. In cases upholding the theory of " 'inherent equitable power to expunge,' " the expunction of such records is a process of weighing the interests of society and of the individuals involved. *In re Interest of P.L.F.*, 218 Neb. 68, 71, 352 N.W.2d 183, 185 (1984).

■ Courts which recognize an inherent power to expunge arrest records have tempered this power by requiring that it be exercised sparingly and only in extraordinary circumstances. *Toth v. Albuquerque Police Dept.*, 123 N.M. 637, 944 P.2d 285 (N.M. App. 1997). See, e.g., *Camfield v. City of Oklahoma City*, 248 F.3d 1214 (10th Cir. 2001); *United States v. Schnitzer*, 567 F.2d 536 (2d Cir. 1977); *In Interest of E.C.*, 130 Wis. 2d 376, 387 N.W.2d 72 (1986); *Bradford v. Mahan*, 219 Kan. 450, 548 P.2d 1223 (1976); *Journey v. State*, 850 P.2d 663 (Alaska App. 1993), *aff'd* 895 P.2d 955 (Alaska 1995); *State ex rel. Peach v. Tillman*, 615 S.W.2d 514 (Mo. App. 1981); *People v. Michael L.*, 80 Misc. 2d 292, 362 N.Y.S.2d 989 (1975). Notably, no court has

questioned the legitimacy or importance of the government's interest in obtaining and retaining records dealing with individuals who pass through our criminal justice system, none has viewed inherent judicial authority to expunge as a power to be used routinely, and none has suggested that the government's interest in maintaining accurate criminal histories can be outweighed in any but exceptional circumstances. See *Journey, supra.*

The logic upon which this requirement is based is that while expunction may be available as an equitable remedy, that remedy may only be properly invoked where the court is afforded with authority to act, by the need to remedy the invasion of legally protected rights. See, *In Interest of E.C., supra*; *Bradford, supra.* While the judicial remedy of expunction may be inherent, and not dependent upon express statutory provision, it exists to vindicate substantial rights provided by statute as well as by organic law. See *Menard v. Saxbe*, 498 F.2d 1017 (D.C. Cir. 1974).

Where constitutional questions are involved, the litigant has the right to raise them in a court of equity and such court has the right to consider them. *Doe, supra.* In cases to which a statutory scheme does not extend, however, the court's inherent power is limited to instances where the petitioner's constitutional rights may be seriously infringed by retention of his or her records. *In re R. L. F.,* 256 N.W.2d 803 (Minn. 1977).

For instance, a number of courts have ordered expunction of local police records as an appropriate remedy in the wake of police action in violation of constitutional rights. *Police Comm'r of Boston v. Municipal Court of the Dorchester District,* 374 Mass. 640, 374 N.E.2d 272 (1978). Federal courts have ordered expunction of arrest records where the arrests were made in violation of the constitutional rights of the individuals arrested. See, e.g., *Menard, supra* (individual arrested and held without probable cause); *Sullivan v. Murphy,* 478 F.2d 938 (D.C. Cir. 1973) (mass arrests, without probable cause, of thousands of individuals protesting American military involvement in Southeast Asia); *United States v. McLeod,* 385 F.2d 734 (5th Cir. 1967) (arrests used to intimidate minority voters in violation of Voting Rights Act).

Assuming, then, that expunction is an available remedy for a court of equity, the issue facing this court is whether the appellant's evidence, taken as true as required by our standard of

appellate review, establishes the extraordinary circumstances necessary for expunction to be ordered. Because the appellant's evidence, taken as true, fails to establish the invasion of a legally protected right, we conclude that the appellant did not prove the extraordinary circumstances that would be necessary to support an order expunging the police investigative reports at issue.

■ The appellant's brief argues that the retention by the LPD of the police reports presents violations of (1) his right to liberty as protected by the Due Process Clause and (2) his right to privacy. We first note that these claims were not clearly articulated by the appellant in his pleadings or at trial. Generally, an issue not presented to the trial court may not be raised on appeal. *Menkens v. Finley*, 251 Neb. 84, 555 N.W.2d 47 (1996). However, it appears that the district court, evidently being of a generous disposition, nonetheless evaluated the appellant's pleadings and evidence to determine if the appellant's rights to privacy or due process had been violated. Therefore, we consider each argument in turn.

■ The appellant argues that the LPD's retention of the police reports deprives him of liberty without due process of law, in violation of the Due Process Clause of the U.S. Constitution. However, the only injury identified in the appellant's petition is harm to his reputation. It is well established that an injury to reputation alone is not enough to create a liberty interest, protected by the Due Process Clause, apart from some more tangible interests such as employment. *Benitez v. Rasmussen*, 261 Neb. 806, 626 N.W.2d 209 (2001). See, *Siegert v. Gilley*, 500 U.S. 226, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991); *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976). Although the appellant expands upon his due process argument on appeal, the appellant's operative petition clearly does not allege a violation of a liberty interest protected by the Due Process Clause. The purpose of pleadings is to frame the issues upon which a cause is to be tried, and the issues in a given case will be limited to those which are pled. *Alegent Health Bergan Mercy Med. Ctr. v. Haworth*, 260 Neb. 63, 615 N.W.2d 460 (2000). Given the appellant's failure to plead, and the failure of the evidence presented at trial to substantiate, the deprivation of any protected liberty interest, we find the appellant's alleged due process claims to be without merit.

The appellant did not specifically plead a violation of his right to privacy either, but the district court, in overruling Casady's and Leuenberger's demurrers, concluded that the appellant's petition alleged facts that would support a finding that the appellant's right to privacy had been violated. The evidence presented at trial, however, failed to show such a violation.

The appellant's argument is premised on the possibility that the police investigative reports will be disseminated and cause him harm. In the first place, we note that the uncontradicted evidence presented at trial indicates that the police reports are not public records and are disseminated only to other law enforcement agencies or when subject to legal process.

Moreover, in *Paul, supra*, the U.S. Supreme Court rejected a claim that a plaintiff's right to privacy had been violated by the dissemination of the fact that he had been arrested for shoplifting. The Court recognized that " 'zones of privacy' may be created by more specific constitutional guarantees and thereby impose limits upon government power." 424 U.S. at 712-13. However, the Court concluded that the plaintiff's claim

> [was] based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be "private," but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner.

424 U.S. at 713. See, also, *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202 (3d Cir. 1991) (information contained in police report not protected by constitutional right of privacy); *J. P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981) (interest asserted in nondisclosure of juvenile court records not protected by constitutional right to privacy); *Roth v. Reagen*, 422 N.W.2d 464 (Iowa 1988) (entry in child abuse registry not violation of constitutionally protected privacy interest); *Loder v. Municipal Court*, 17 Cal. 3d 859, 553 P.2d 624, 132 Cal. Rptr. 464 (1976) (limited retention and dissemination of arrest records does not violate right of privacy).

In the instant case, the evidence does not indicate, and the appellant does not argue, that the police investigative reports at issue were generated in violation of the appellant's constitutional rights. While the appellant sought to impeach the information in

the reports, he does not claim, and the evidence would not support concluding, that the investigation was undertaken in bad faith or that the reports were the result of actionable police misconduct. Compare, *United States v. Schnitzer*, 567 F.2d 536 (2d Cir. 1977); *United States v. Linn*, 513 F.2d 925 (10th Cir. 1975); *Toth v. Albuquerque Police Dept.*, 123 N.M. 637, 944 P.2d 285 (N.M. App. 1997); *State ex rel. Peach v. Tillman*, 615 S.W.2d 514 (Mo. App. 1981) (cases holding expunction of arrest record not appropriate where arrest was lawful).

While the appellant claims that the information contained in the police investigative reports is embarrassing to him, those reports do not contain confidential information and explicitly exonerate the appellant of any illegal conduct. The appellant's argument essentially appears to be that he is entitled to have the reports expunged because some of the conclusions are wrong and because the appellant believes the investigating officer did not conduct a complete investigation. This claim, however, does not support a finding that a legal right of the appellant has been invaded. Accepting the appellant's argument would require the judiciary to become the arbiter of what is and is not good police work, and to edit police reports to remove conclusions over which there is disagreement. This is simply not an appropriate judicial function.

Police reports summarize the facts surrounding an event and constitute a necessary log of police activity. See *State v. L.K.*, 359 N.W.2d 305 (Minn. App. 1984). The hallmark of our system of government calls for the preservation of accurate official records rather than suppression of information. *Spock v. District of Columbia*, 283 A.2d 14 (D.C. App. 1971). If a record of involvement with criminal process is expunged, the traces literally vanish and no indication is left behind that information has been removed. *Com. v. Roberts*, 39 Mass. App. 355, 656 N.E.2d 1260 (1995). Therefore, it is possible that the judicial editing of history could produce a greater harm than that sought to be corrected by the expunction of certain information from a police report. See *Camfield v. City of Oklahoma City*, 248 F.3d 1214 (10th Cir. 2001).

Given the uncontradicted testimony of Casady regarding the utility of these police reports to the LPD, the commands of a

government of laws require that this court confine its acts within the scope of judicial power recognizing the coequal powers of the other branches of government. See *Mulkey v. Purdy*, 234 So. 2d 108 (Fla. 1970). The reservation of possible judicial review of police records in cases of overriding equitable considerations, based on the violation of established legal rights, is to provide a remedy in the rare case where extraordinary circumstances so warrant. See *id.* Because the appellant's evidence in this case, taken as true, failed to establish such circumstances, we conclude that the district court did not err in dismissing the appellant's cause of action. The appellant's first two assignments of error are without merit.

## EVIDENTIARY ISSUE

The appellant also argues that the district court abused its discretion in excluding the evidence the appellant proffered that he claims would have attacked the conclusions in the police reports. We first note that the appellant's brief appears to argue that the exclusion of this evidence violated his right to due process of law. However, the record does not indicate that this due process argument was presented to the trial court; therefore, we do not consider it. When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999). We do consider the appellant's argument that this evidence was erroneously excluded on the basis of relevance.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000). For evidence to be relevant under § 27-401, all that must be established is a rational, probative connection, however slight, between the offered evidence and a fact of consequence. *Snyder, supra.*

We conclude that the trial court erred in excluding the appellant's proffered evidence to the extent that it was relevant to the truth of the conclusions set forth in the police reports. As noted

above, expunction of police records is a process of weighing the interests of society and of the individual involved. Whether the facts set forth in a police report are true or false will directly bear on the interests of the individual involved, as the harm done to the individual's legally protected interest may vary depending upon the veracity of the information that is disseminated. See *Bound v. Biscotti*, 76 Ohio Misc. 2d 6, 663 N.E.2d 1376 (1995). Furthermore, the utility of a police record to law enforcement may depend on the reliability of the information contained in the report. See *Police Comm'r of Boston v. Municipal Court of the Dorchester District*, 374 Mass. 640, 374 N.E.2d 272 (1978). Thus, while we cannot countenance the use of the courts as a forum for questioning the competence of an investigation, evidence bearing on the reliability of a police report is certainly relevant to the analysis necessary to determine if expunction is appropriate.

However, we conclude that this error does not require reversal, as it does not affect the issue that the district court and this court have determined to be dispositive. The investigative reports conclude that the appellant did not commit any crime, and even if the other opinions expressed by the investigating officer are incorrect or subject to dispute, there is no evidence that maintaining the reports in police records would invade the appellant's rights to privacy or due process of law. Even if the appellant's evidence had been accepted by the district court and had successfully undermined the conclusions set forth in the police reports, the appellant's petition would still fail to plead, and his evidence would still fail to establish, the invasion of a legally protected right. Absent such proof, the appellant is not entitled to the remedy of expunction.

## CONCLUSION

Assuming, without deciding, that expunction of police records is an available remedy under extraordinary circumstances when an individual's legally protected rights have been invaded, the appellant's evidence, taken as true, failed to establish such circumstances. The district court did not err in dismissing the appellant's petition at the close of his evidence, and we therefore affirm the judgment of the district court.

AFFIRMED.