WILLIAM D. HEIN, DOING BUSINESS AS MID AMERICA COMPOST, APPELLANT, v. M & N FEED YARDS, INC., A NEBRASKA CORPORATION, ALSO KNOWN AS M & N FEEDLOT, APPELLEE.

289 N. W. 2d 756

Filed March 11, 1980. No. 42596.

Kelley, Wallace, Scritsmier, Moore, Romatzke, Merritt & Byrne, P.C., for appellant.

W. Wesley Lubberstedt, for appellee.

Heard before BOSLAUGH, MCCOWN, CLINTON, and WHITE, JJ., and WOLF, District Judge.

WOLF, District Judge.

This is an appeal from the judgment entered by the District Court for Kearney County, Nebraska, giving judgment in favor of the plaintiff and against the defendant, M & N Feed Yards, Inc., in the amount of $4,706.50, and further ordering that each party shall pay its own court costs including costs of depositions.

When this matter went to trial before the court, the only defendant remaining was M & N Feed Yards, Inc., a Nebraska corporation, the other defendants having been previously dismissed by the court upon motion. The record discloses that the plaintiff, William D. Hein, did business as Mid America Compost out of Gothenburg, Nebraska. His principal business was contracting with feedlots to convert their organic waste into compost which would be sold as fertilizer. The defendant, M & N Feed Yards, Inc., owned and operated a feed yard approximately 6 miles south of Kearney in Kearney County, Nebraska. The plaintiff and the defendant entered into a written contract on August 11, 1976.

The essence of the contract was that the defendant would furnish the manure from its feedlot, transport it to an adjoining site where it would be placed by the defendant in windrows, and that the plaintiff would furnish the bacterial agent, machinery, and labor to treat the manure. It was further provided, in the language of the contract: "Completed compost value will be $25.00/ton. Upon completion of compost feedlot shall pay in full to MAC $5.00 estimated ton. Test weights may be taken during spreading if feedlot desires. Adjustments will be made accordingly.

"Should future sales be made the following is agreed to:

"MAC will provide promotional and informational aid to Feedlot to assist in marketing the compost including conducting sales and demonstrations.

"Feedlot shall be responsible for sales of the compost, billing therefor and collection of amounts due or to become due from purchases of the compost.

"Feedlot or MAC load and weigh the compost at time of delivery to customer.

"It is mutually agreed that each party shall have title to one-half (½) of the compost after initial treatment and that all sales shall be on a prorated basis. Sale proceeds shall be divided equally after the payment to Feedlot. Payments shall be made monthly by the tenth of the month following delivery to customer. MAC shall be furnished with such monthly payments on accounting for all transactions during the previous month.

"It is mutually agreed that the selling price shall be determined by agreement of the parties and shall be based F. O. B. the feedlot."

The defendant commenced the windrowing of the manure prior to the execution of the contract and the actual composting was started in late July or early August of 1976. The plaintiff performed the composting operation within approximately 6 to 8

weeks. Composting was finished in the latter part of September. Plaintiff's witnesses testified that before any of the compost was delivered to customers, there were five windrows, each approximately 800 feet in length. Defendant's witness testified that although there were five windrows, they were not of uniform length. He testified that the longest windrow was about 600 feet long and the shortest windrow was about 150 to 200 feet long.

Sales of the compost were arranged by the defendant and were hauled by Hooker Brothers, a commercial trucking firm. All loads delivered by Hooker Brothers were weighed on the defendant's scales and the tonnage delivered by Hooker Brothers in the fall amounted to 1,026,505 tons and used all the compost in windrow number 1 and about one-fourth of the compost in windrow number 2. In December of 1976 or January of 1977 the plaintiff had a test run on the compost by a testing laboratory and discovered that the compost delivered was of poor quality because of the excessive amount of sand in the compost. They mutually agreed that the price would be $25 for each 2 tons and that instead of spreading 2 tons per acre, they would spread 4 tons per acre. The plaintiff agreed to haul the additional 2 tons to the customers who had already been supplied. Unfortunately, the plaintiff kept no records of the tonnage hauled by him and no weights were taken of the trucks used by the plaintiff. When the plaintiff completed the hauling of the doubleup loads, there is testimony to the effect that there were parts of two windrows left at the feedlot which had not been used because they were in an area where the water level was too high. Subsequently, the defendant sold and delivered some additional compost which was charged at the rate of $12.50 per ton and some compost which was charged at the rate of $6.25 per ton on the basis that the compost had absorbed more moisture and was of less value.

The judgment awarded by the District Court in favor of the plaintiff was clearly equal to one-half the total amounts collected by the defendant feedlot for compost delivered, adjusted, however, to $12.50 a ton rather than the special price of $6.25 per ton made to one purchaser, and reduced by the $10,000 previously paid by the defendant to the plaintiff pursuant to the contract.

The principal assignments of error by the plaintiff are: (1) The court erred in requiring the plaintiff to prove the amount of his damages to a degree of certainty greater than that required by law; (2) the court erred in failing to award prejudgment interest on the amount of any judgment awarded to plaintiff; and (3) the court erred and abused its discretion in failing to tax the costs of the action against the defendant.

We note that each of the matters raised by the plaintiff cannot be adequately addressed without determining the nature of the action. The prayer of the original petition and the first amended petition upon which the action was tried is as follows: "WHEREFORE, Plaintiff prays for judgment against the Defendants and each of them in the amount of $15,000 or a sum based on an actual accounting pursuant to the terms of the written contract attached hereto as Exhibit A as subsequently orally amended together with interest as provided by law, attorneys fees as provided by law, all costs of this action, and such further equitable relief as may be deemed appropriate by this court."

The summons served upon the defendant was endorsed: "If defendant fail to appear and answer, the plaintiff will take judgment for $15,000, together with interest at the legal rate and costs."

The nature of an action, whether legal or equitable, is determinable from its main object, as disclosed by the averments of the pleadings and the relief sought. Roy v. Bladen School Dist. No. R-31,

165 Neb. 170, 84 N. W. 2d 119.

Although the plaintiff was apparently not awarded any equitable relief in the form of an accounting, the nature of the action is not based on the nature of the relief afforded but on the nature of the relief sought. Clearly, the plaintiff sought equitable relief and we, therefore, classify this as an equitable action, although neither party tried to classify the case as an action at law or as an equitable action in the briefs submitted herein.

Equity cases are heard de novo by this court. In determining the weight to be given the evidence, however, this court will consider the fact that the trial court observed the witnesses and their manner of testifying. Rudolph v. Hartung, 202 Neb. 678, 277 N. W. 2d 60; West Gate Bank v. Eberhardt, 202 Neb. 762, 277 N. W. 2d 104.

Although the plaintiff does not have the burden to prove his damages to a mathematical certainty, the plaintiff does have the burden to prove by a preponderance of the evidence the amount of his damages to a reasonable certainty. Reasonable certainty does not even require that the plaintiff establish the dollar amount in an exact fashion, but only that the plaintiff establish by a preponderance of the evidence the basic facts upon which an award may be reasonably based. This suit is brought under a written contract and the contract clearly provides that the compost material will be owned one-half by each of the parties and that there is no obligation under the contract for the defendant to pay the plaintiff anything except one-half the sale proceeds when received. Although the contract does impose the burden of collection upon the defendant, we find no mention of guarantee of payment and thus, under the contract, the plaintiff is only entitled to one-half the proceeds of the sale of the compost owned jointly by the parties. The plaintiff has not established that the defendant has actually received money

or is entitled to receive money other than that admitted to be received by the defendant, nor is there any reasonable evidence upon which it could be determined or suspected that the defendant converted the compost to its own uses.

This court concurs that the judgment of the trial court was the most reasonable judgment under all the circumstances, and that the trial judge was correct in charging the defendant with the $12.50 per ton on all fertilizer rather than the $6.25 per ton collected by the defendant on some of the fertilizer, based upon the language of the contract that "the selling price shall be determined by agreement of the parties," and there being no evidence of any agreement of the parties further reducing the sale price below $12.50 per ton.

This action having been denoted an equitable action, the trial court would have the authority as a part of the judgment to award the plaintiff prejudgment interest on all or part of the award should he have determined that the circumstances so required.

The rule has been firmly established in Nebraska that where the amount due under a contract or claim is subject to reasonable controversy and is incapable of being fixed by computation, recovery of interest may be had only from the date of determination of the right of recovery and the amount thereof. Wilson Concrete Co. v. A. S. Battiato Constr. Co., 196 Neb. 185, 241 N. W. 2d 819. We find that the amount due in this suit is dependent upon the weight and the price of that compost sold by the defendant. As reflected above, both the weight of compost and the appropriate selling price were not determined until judgment was awarded in this trial. From the record herein, it is obvious that substantial dispute existed between the parties as to the amount of compost and as to the substandard condition of the compost which could and did affect its

price. We conclude that the trial court was correct in denying prejudgment interest.

The plaintiff disputes the right of the trial court to apportion costs between the parties as they incurred them, including the costs of depositions. The plaintiff relies upon section 25-1708, R. R. S. 1943, which states: "Where it is not otherwise provided by this and other statutes, costs shall be allowed of course to the plaintiff, upon a judgment in his favor, in actions for the recovery of money only, or for the recovery of specific real or personal property."

The defendant, on the other hand, apparently relies upon section 25-1711, R. R. S. 1943, which states in part: "In other actions, the court may award and tax costs, and apportion the same between the parties on the same or adverse sides, as in its discretion it may think right and equitable."

In equity actions, taxation of costs rests in the discretion of the trial court. Ehlers v. Campbell, 159 Neb. 328, 66 N. W. 2d 585.

The action of the trial court in taxing costs is not reviewable unless an abuse of discretion is shown. In re Estate of Nielsen, 135 Neb. 110, 280 N. W. 246.

This court is unable to review and determine whether the trial court abused its discretion in apportioning costs where there is no record before us as to the nature and amount of the costs incurred. This court, therefore, finds no abuse of discretion by the trial court in denying plaintiff recovery of costs.

AFFIRMED.