777 N.W.2d 810 (2010)
279 Neb. 284
Willard TEADTKE and Lola Teadtke, husband and wife, as Trustees of the Willard and Lola Teadtke Trust, appellees and cross-appellants,
v.
E.D. HAVRANEK, also known as Eddie Dean Havranek, and Karen K. Havranek, husband and wife, appellants and cross-appellees, and
Town of Lynch, Boyd County, Nebraska, also known as Lynch Township, et al., appellees.
No. S-09-165.
Supreme Court of Nebraska.
January 22, 2010.
*814 Shannon L. Doering for appellants.
Tom D. Hockabout, of Egley, Fullner, Montag & Hockabout, for appellees Willard Teadtke and Lola Teadtke.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
This case was initiated by appellees, Willard Teadtke and Lola Teadtke, by the filing of a complaint seeking the declaration of a roadway easement and injunctive relief. E.D. Havranek and Karen K. Havranek appeal from the orders of the district court for Boyd County, which exercised its equity jurisdiction and found that a public prescriptive easement exists across the Havraneks' property and defined the extent and nature of the easement. The Havraneks assert that the court erred by exercising its equity jurisdiction in this action, because the Teadtkes failed to avail themselves of the statutory remedy dealing with isolated land provided under Neb.Rev.Stat. §§ 39-1713 through 39-1719 (Reissue 2008) prior to filing this action. The Havraneks also appeal from the district court's decision on the merits. The Teadtkes cross-appeal the denial of their request for the cost of their road survey. Finding no error, we affirm.

STATEMENT OF FACTS
The Havraneks and the Teadtkes own adjoining properties located in Boyd County, Nebraska. The Teadtkes' 80-acre parcel is located directly south of the Havraneks' land. The only access to the Teadtkes' property is a road that runs south across the Havraneks' property from Nebraska Highway 12.
On November 26, 2007, the Teadtkes filed a complaint against the Havraneks and certain other parties. This appeal involves only the Teadtkes and the Havraneks. The complaint sought a declaration that there exists a public road across the Havraneks' property or a declaration that the Teadtkes own a private easement over the Havraneks' property from Highway 12 to the Teadtkes' property. The Teadtkes *815 also sought an injunction preventing the Havraneks from obstructing the road within its 40-foot width and requiring the Havraneks to remove any existing obstructions. The Teadtkes asserted that the Havraneks had encroached on the right-of-way by constructing a fence that prevented the Teadtkes from moving implements and machinery along the road.
In their response, the Havraneks asked the district court to dismiss the Teadtkes' complaint for the reason, inter alia, that §§ 39-1713 through 39-1719 provide an adequate statutory remedy for the Teadtkes' alleged inadequate access to their property. The Havraneks argued that the court lacked equity jurisdiction because the Teadtkes failed to exhaust this statutory remedy dealing with isolated land.
At trial, the Teadtkes presented the testimony of residents of the area who testified regarding their recollections of the use of the land now owned by the Teadtkes. One longtime resident testified that the road that runs through the property now owned by the Havraneks had been used to access lands south of the Havraneks' property as far back as the 1930's and continuing through the 1940's. Other residents testified that at various times since the 1960's, the road had been used to access land south of the property for hunting, agricultural, and construction purposes. The Teadtkes presented the testimony of a member of the Lynch Township Board. He testified that he had been a member of the board since 1997 or 1998 and that in that time, the board had authorized maintenance of the road "once or twice a year" and had paid for a culvert to be installed.
The Teadtkes testified regarding their personal use of the road since the mid-1950's to access their property, which was then owned by Willard Teadtke's father. The Teadtkes have owned the land since 1993. They testified that other people had also used the road for various purposes over the years. Willard Teadtke testified that in order to accommodate the types of equipment that have traversed the road, the road needed to be 35 to 40 feet wide. He also testified that he paid a surveying firm $2,707.71 to perform a survey of the road. The Teadtkes presented the testimony of the land surveyor who had performed the survey. In connection with the surveyor's testimony, the court received into evidence the surveyor's drawing depicting an easement for the road with a width of 40 feet.
After the Teadtkes presented their evidence, the court stated that at the Teadtkes' request, the court intended to "personally view the property in question," which would entail "just driving down the road, making observations," accompanied by counsel for the parties. The court later noted for the record that the court had "had an opportunity to go out and observe the real estate in question."
In the Havraneks' defense, E.D. Havranek testified that in 2006, he put up a gate at the Highway 12 entrance to the road after obtaining the Teadtkes' approval. After the gate was removed, E.D. Havranek began installing a fence along the east side of the road in June 2007. E.D. Havranek testified that the fence he constructed ran along only a part of the property and that other fencing had been there since at least 1965. He also testified that he had measured the width of the road as it entered from Highway 12 and that the width from the outer edges of the wheel tracks was 10 feet 6 inches.
Following trial, the court entered a decree on February 4, 2009. The court first rejected the Havraneks' argument that the court should not exercise its equity jurisdiction. The court indicated that §§ 39-1713 *816 through 39-1719 provide a remedy for an owner of land that is "shut out from all public access" and noted that such remedy exists so that the landowner may petition the county board to establish and provide an access road. The court stated that the purpose of the present action as alleged by the Teadtkes was to determine whether the Teadtkes had access to their land by an established public road or by a prescriptive private easement. The court reasoned that the statutory remedy was not appropriate unless and until it was determined in this case that the land was shut out from all public access. If the result of this action were adverse to the Teadtkes, then they could allege that they have no public access to their property and could seek redress from the county board pursuant to §§ 39-1713 through 39-1719. If the court in this action declared that a public road existed or that the Teadtkes held a prescriptive easement, then the land would not be shut out from all public access and there would be no remedy under the statutes. The court therefore concluded that the statutory remedy provided in §§ 39-1713 through 39-1719 did not prevent the court from exercising its equity jurisdiction in this case.
The court then considered the substance of the complaint to determine whether a prescriptive easement existed. The court found the following from the evidence: As early as the 1930's, the road was used to access properties to the south of the Havraneks' property. The Teadtkes began occupying their property in the mid-1950's and bought the property in 1993; during that time, they had, for the most part, used the road without restriction. During a period in 2006, the Havraneks placed a gate across the road near Highway 12 during pasture season, but the Havraneks sought the Teadtkes' permission to place the gate, which was removed when the need for its use no longer existed.
The court concluded that the Teadtkes had established the existence of a prescriptive easement by clear, convincing, and satisfactory evidence. The court determined that the Teadtkes and their predecessors in title had used and enjoyed the road since at least the mid-1950's. The court noted that because use of the road was uninterrupted and open for the required 10-year period, the presumption was raised that the use was adverse and under claim of right. The court further noted that the Havraneks did not overcome that presumption, because they adduced no evidence that the Teadtkes' or the public's use of the road was by license, agreement, or permission.
Referring to the evidence, the court further concluded that the prescriptive easement was public in nature. The court acknowledged that at the time of trial, use of the road was generally limited to the Teadtkes and their employees, contractors, and business associates. However, the court noted considerable evidence that from the 1930's through the 1950's, other persons used the road to access property south of the Havraneks' property because they lived on such property or they used the property for agricultural or hunting purposes. The court further noted that since at least 1997, the Lynch Township Board annually authorized grading of the road and, in 1998, installed a culvert under the road.
With regard to the extent of the easement, the court rejected the Teadtkes' request for an easement 40 feet in width along the entire length of the road. The court noted that the evidence established that the Teadtkes and others used a 35- to 40-foot-wide strip to negotiate the turn onto the road from Highway 12 and the first two curves of the road south of Highway 12; however, the court determined *817 that the Teadtkes failed to establish that the road was 40 feet wide throughout its length.
Given the evidence, the court ordered and decreed that the public held a public prescriptive easement for ingress and egress over and across the Havraneks' property. The easement was declared to be 40 feet wide at the entrance from Highway 12 and through the first two curves and 20 feet wide for the remainder of the easement. The court entered an injunction prohibiting the Havraneks from interfering with the public easement and requiring them to remove any existing encroachments they had placed on the property. The court taxed costs of $201.39 to the Havraneks and ordered all parties to pay their own remaining costs. The court overruled and denied any other claims for relief by either party, including the Teadtkes' request to be awarded the cost of their road survey.
The Havraneks appeal, and the Teadtkes cross-appeal.

ASSIGNMENTS OF ERROR
The Havraneks assert that the district court erred when it (1) exercised its equity jurisdiction in this action; (2) granted a public prescriptive easement; and (3) defined the scope of the easement, which exceeded the boundaries of what had been used by the Teadtkes or their predecessors.
For their cross-appeal, the Teadtkes assert that the court erred when it failed to tax as costs the expense they incurred for a survey of the road.

STANDARDS OF REVIEW
When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from that of the trial court. Miller v. Regional West Med. Ctr., 278 Neb. 676, 772 N.W.2d 872 (2009).
A suit to confirm a prescriptive easement is one grounded in the equitable jurisdiction of the district court and, on appeal to this court, is reviewed de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, this court will consider that the trial court observed the witnesses and accepted one version of the facts over another. Gerberding v. Schnakenberg, 216 Neb. 200, 343 N.W.2d 62 (1984).
The decision of a trial court regarding taxing of costs is reviewed for an abuse of discretion. See Hein v. M & N Feed Yards, Inc., 205 Neb. 691, 289 N.W.2d 756 (1980).

ANALYSIS

Appeal: The District Court Properly Exercised Its Equity Jurisdiction.
The Havraneks first assert that the district court improperly exercised its equity jurisdiction in this case. They argue that the Teadtkes had an adequate statutory remedy under §§ 39-1713 through 39-1719 but failed to avail themselves of such remedy prior to seeking equitable relief. Given the allegations in the complaint and the relief sought, we conclude that the court properly exercised its equity jurisdiction.
In this action, the Teadtkes sought as relief a declaration that a public road existed over the Havraneks' property or a declaration that the Teadtkes owned a prescriptive easement over the property. The Teadtkes also sought injunctive relief to prevent the Havraneks from encroaching upon the road and to require the Havraneks to remove existing encroachments. An adjudication of rights with respect to an easement is an equitable action, Homestead *818 Estates Homeowners Assn. v. Jones, 278 Neb. 149, 768 N.W.2d 436 (2009), and an action for injunction sounds in equity. Conley v. Brazer, 278 Neb. 508, 772 N.W.2d 545 (2009).
Where a statute provides an adequate remedy at law, equity will not entertain jurisdiction, and the statutory remedy must be exhausted before one may resort to equity. V.C. v. Casady, 262 Neb. 714, 634 N.W.2d 798 (2001). An adequate remedy at law means a remedy which is plain and complete and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. Lambert v. Holmberg, 271 Neb. 443, 712 N.W.2d 268 (2006).
The Havraneks claim that the district court should not have entertained this action in equity, because the Teadtkes did not exhaust the statutory remedy under §§ 39-1713 through 39-1719. These statutes generally provide owners of isolated land the right to obtain access to the land by an access road or a public road. The owner of isolated land may apply to the county board as set forth in § 39-1713. If the board finds that certain conditions are present, the board is required to provide an access road or a public road to the land; the board is also required to appraise the damages to the owner of the land over which access is to be provided, and such damages are to be paid by the person petitioning for access. See § 39-1716.
It is important to note that the relief available under §§ 39-1713 through 39-1719 is limited to owners of "isolated" lands. Under § 39-1713(1), a person seeking relief under the statutes must allege, inter alia, that "such real estate is shut out from all public access, other than a waterway, by being surrounded on all sides by real estate belonging to other persons, or by such real estate and by water." Such an assertion is inconsistent with the allegations made by the Teadtkes in this case.
The Teadtkes did not allege that their land was shut out from all public access; to the contrary, the gravamen of their complaint was that a road existed over the Havraneks' property and that the road provided access to their property. The Teadtkes sought a declaration that a public road existed and an injunction preventing the Havraneks from interfering with use of the road. Because the Teadtkes claimed the existence of a public road that provided access to their property, it would have been inconsistent for them to have alleged that their land was isolated or "shut out from all public access," as required for relief under §§ 39-1713 through 39-1719. See Burton v. Annett, 215 Neb. 788, 789, 341 N.W.2d 318, 319 (1983) (noting that land-owner in action under § 39-1713 had "unsuccessfully sought judgment ... for declaration of a prescriptive right-of-way" prior to pursuing statutory remedy under § 39-1713).
Because it was the Teadtkes' position that a public road provided access to their land, the statutory remedy provided under §§ 39-1713 through 39-1719 was not available to them and they were not required to exhaust such remedy prior to bringing this equitable action. We conclude that the district court's analysis to the same effect was correct and that the district court did not err by exercising its equity jurisdiction in this case.

Appeal: The District Court Did Not Err by Granting a Public Prescriptive Easement and Defining the Scope Thereof.
The Havraneks next assert that the district court erred by granting a public prescriptive easement. They argue as a general matter that the Teadtkes failed to establish a prescriptive easement by clear and convincing evidence, and they argue in particular that the Teadtkes failed to establish *819 or even allege the existence of a public, as opposed to a private, easement. The Havraneks further claim that the court erred by granting an easement that exceeded in scope what had been used by the Teadtkes or their predecessors.
We first address the Havraneks' assertion that the Teadtkes failed to allege the existence of a public, as opposed to a private, easement. In their complaint, the Teadtkes alleged that a road existed across the Havraneks' property between Highway 12 and the Teadtkes' property and that "said road is a public road used by [the Teadtkes and others] and the public in general." They also alleged that the road had been maintained by the town of Lynch "for many years." For their prayer for relief, the Teadtkes asked that the court "declare there exists a public road" across the Havraneks' property or, in the alternative, that the court declare that the Teadtkes owned a private easement over the Havraneks' property. The Teadtkes did not fail to allege the existence of a public easement, and we therefore consider whether the evidence established the existence of such public easement.
To establish a road or highway by prescription, there must be a use by the general public, under a claim of right adverse to the owner of the land, of some particular or defined line of travel, and the use must be uninterrupted and without substantial change for 10 years, the period of time necessary to bar an action to recover the land. Harders v. Odvody, 261 Neb. 887, 626 N.W.2d 568 (2001). To prove a prescriptive right to an easement, all the elements of prescriptive use must be generally established by clear, convincing, and satisfactory evidence. Id.
The use and enjoyment which will give title by prescription to an easement is substantially the same in quality and characteristics as the adverse possession which will give title to real estate. Such use must be adverse, under a claim of right, continuous and uninterrupted, open and notorious, exclusive, with the knowledge and acquiescence of the owner of the servient tenement, for the full prescriptive period. Id.
The district court found that all the elements of a public prescriptive easement existed. The court noted testimony regarding use of the road as early as the 1930's by prior landowners and others to access both the land now owned by the Teadtkes and other real estate. The court also noted testimony regarding use of the road since the 1950's by the Teadtkes and their associates. Such use extended for a period exceeding the 10 years required to establish a prescriptive easement.
The prevailing rule is that where a claimant has shown open, visible, continuous, and unmolested use of land for a period of time sufficient to acquire an easement by adverse user, the use will be presumed to be under claim of right. Harders v. Odvody, supra. If a person proves uninterrupted and open use for the necessary period without evidence to explain how the use began, the presumption is raised that the use is adverse and under claim of right, and the burden is on the owner of the land to show that the use was by license, agreement, or permission. Id. The presumption of adverse use and claim of right, when applicable, prevails unless it is overcome by a preponderance of the evidence. Id. The Havraneks did not provide sufficient evidence to overcome the presumption of adverse use and a claim of right.
The word "exclusive" in reference to a prescriptive easement does not mean that there must be use only by one person, but, rather, means that the use cannot be *820 dependent upon a similar right in others. Werner v. Schardt, 222 Neb. 186, 382 N.W.2d 357 (1986). The Teadtkes showed that their use of the property was not dependent on a similar right in others.
The evidence also established that the easement was public. According to the record, the road had been used by various persons for various purposes since the 1930's. In more recent years, the road had mainly been used by the Teadtkes and their associates. However, in the case of public roads, the fact that only a few members of the public still use the road does not mean that the road has been abandoned. Sellentin v. Terkildsen, 216 Neb. 284, 343 N.W.2d 895 (1984). The evidence also showed that the Lynch Township Board had authorized maintenance of the road and had installed a culvert. In view of the evidence, we conclude that the district court did not err in concluding that the public held a prescriptive easement over the Havraneks' property.
With regard to the extent and scope of the easement, the Havraneks argue that by declaring an easement that was 40 feet wide in certain areas, the court exceeded the scope of actual use that had been proved by the Teadtkes. The court ordered that the easement was 20 feet wide through much of its length, rather than the 40 feet requested by the Teadtkes for the entire length of the easement. However, the court ordered that the easement was 40 feet wide for a portion of the easement that was near Highway 12. The court found that the additional width was needed for the Teadtkes and others "to negotiate the turn onto the road from Highway 12 and the first two curves south of Highway 12."
The nature and extent or scope of an easement must be clearly established. Werner v. Schardt, supra. The extent and nature of an easement is determined from the use made of the property during the prescriptive period. The width of a public highway acquired by prescription or dedication must be determined as a question of fact by the character and extent of the use or the amount dedicated to public use. If the public has acquired the right to a highway by prescription, it is not limited in width to the actual beaten path, but the right extends to such width as is reasonably necessary for public travel. Smith v. Bixby, 196 Neb. 235, 242 N.W.2d 115 (1976).
We conclude that the district court did not err in the widths it assigned to the various portions of the easement. We note that Willard Teadtke testified regarding the difficulties of negotiating the turn from Highway 12 and the curves in the road near Highway 12. Willard Teadtke also testified that the road was used to transport farm machinery and other large equipment for farming operations on the Teadtkes' property. We note further that the court in this case stated on the record that it "had an opportunity to go out and observe the real estate in question." In determining that the court did not err in the widths it assigned to the easement, we consider the fact that the court actually observed the road and the surrounding area and from such observation determined that a width of 40 feet was necessary in certain areas so that the Teadtkes and others could transport machinery and equipment over the road.
We conclude that the district court did not err in concluding that the public held a prescriptive easement over the Havraneks' property and did not err in declaring the easement to have a width of 40 feet in certain areas.

Cross-Appeal: The District Court Did Not Err When It Declined to Tax as Costs the Expense for the Road Survey.
In their cross-appeal, the Teadtkes assert that the district court *821 erred when it declined to tax as costs the expense they incurred for a survey of the road. We conclude that the court did not abuse its discretion by deciding not to tax as costs the $2,707.71 the Teadtkes incurred for the survey.
In equity actions, taxation of costs rests in the discretion of the trial court. Hein v. M & N Feed Yards, Inc., 205 Neb. 691, 289 N.W.2d 756 (1980). The Teadtkes assert that this action was necessitated by the Havraneks when they encroached upon the Teadtkes' use of the road and that therefore the Havraneks as the unsuccessful party should bear some of the costs the Teadtkes' incurred to help the court make an accurate ruling.
In its order, the court taxed costs in the amount of $201.39 to the Havraneks and ordered that "each party shall pay their remaining costs." Given our standard of review, we determine that the district court did not abuse its discretion in the taxation of costs, and we reject the Teadtkes' assignment of error on cross-appeal.

CONCLUSION
We conclude that the district court properly exercised its equity jurisdiction in this case and that the court did not err by declaring a public prescriptive easement and did not err in determining the scope of the easement. We further conclude that the court did not err when it declined to tax as costs to the Havraneks the expense the Teadtkes incurred for a road survey. We therefore affirm the orders of the district court.
AFFIRMED.