IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


JAEGER V. BLOOMBERG


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


EDWIN L. JAEGER AND DONNA C. JAEGER, HUSBAND AND WIFE, APPELLEES,

V.

RODGER E. BLOOMBERG AND CAROL J. BLOOMBERG, HUSBAND AND WIFE, APPELLANTS,
AND LONNIE D. KURKOWSKI, APPELLEE.


Filed June 23, 2015.    No. A-14-866.


Appeal from the District Court for Keith County: RICHARD A. BIRCH, Judge. Affirmed.

Randy Fair, of Dudden & Fair, P.C., L.L.O., for appellants.

Gregory J. Beal, of Beal Law Firm, for appellees Bloombergs.


MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

Roger E. Bloomberg and Carol J. Bloomberg appeal from an order of the district court for Keith County granting Edwin L. Jaeger and Donna C. Jaeger an access easement across the Bloombergs' property based upon the theory of prescriptive easement. Based on the reasons that follow, we affirm.

## BACKGROUND

The Jaegers and the Bloombergs own adjoining properties located in Keith County, Nebraska. The Jaegers' land is directly west of, and adjacent to, one tract of land owned by the Bloombergs. The Bloombergs' property also includes tracts that are east and south of the tract that

adjoins the Jaegers' property. The Jaegers allege that the only access to their property is a road that runs east and west across a portion of the Bloombergs' property.

The Jaegers purchased their land in September 1973 and immediately built a home on the property. The Bloombergs bought their property in August 1973, but did not build a home on the property until 1976. The Bloombergs can access their property from the same road that the Jaegers claim to have been using and want to continue to use, as well as another east/west road that is located south of the road at issue. Both parties purchased their land from the same owner, and the land was all pasture at the time it was purchased.

On November 9, 2011, the Jaegers filed an amended complaint against the Bloombergs alleging that they had used the road on the Bloombergs' property for 36 years to access their house and that the Bloombergs were now trying to restrict their access to their property and had taken the position that the Jaegers have no right to use the road. The Jaegers requested that the court enter an order finding that they have an express easement, an easement of necessity, or a prescriptive easement for the road at issue, allowing them to continue using the road to access their property.

The Bloombergs filed an answer and several counterclaims. Lonnie Kurkowski, who owns land east of the Bloombergs that is part of the road at issue, filed an answer and cross-complaint. Kurkowski stated in his pleading that he did not object to the Jaegers use of the road and he believed it should remain open for their use, as it is the only reasonable access to their home in his opinion.

Trial was held in April 2013 to determine whether the Jaegers had an access easement across the Bloombergs' property. Edwin Jaeger testified that in the fall of 1973, the same year both parties bought their property, he and Roger Bloomberg built the road now at issue. Edwin testified that no other roads existed at the time they purchased the property. Edwin and Donna Jaeger both testified that they began using the road after it was constructed in 1973 and have been continuously using it since then.

Edwin testified that there was never any agreement or discussion about the use of the road, he and his family just used it. Donna testified that based on the abstract of title she and Edwin received when they purchased their property, she understood that the road at issue would be their access to their property. Travis Jaeger, Edwin and Donna's son, testified that the Jaegers never asked the Bloombergs for permission to use the road, and the Bloombergs never told them that they could not use it.

The Jaegers both testified that they had unrestricted use of the road at issue until 2010. At that point, the Bloombergs began putting up signs and telling the Jaegers they could not use the road.

The Jaegers testified that since 1973, friends and neighbors have used the road at issue to visit them. They testified that their three children, who are now adults, continuously used the road when they were old enough to drive and their friends also used the road to get to and from the Jaeger house. The Jaegers also testified that the United States Post Office used the road at issue to deliver their mail, and Federal Express and UPS also used the road for deliveries to the Jaegers. The Jaegers' garbage service also used this road to pick up garbage from the Jaegers' home, and

emergency vehicles have used the road to get to their home. Donna also testified that the county road maintainer used to come onto the road.

Donna testified that her family provided maintenance for the road at issue continually since 1973. Travis testified that he remembered his father working on the road when he was a child. He also testified that he worked on the road at different times when he was older, doing such jobs as grading, laying gravel, and snow removal.

Kurkowski also testified about the use of the road over the years. He testified that the Jaegers used the road continuously since he acquired his property in 1979. He testified that he has observed garbage trucks and the United States Postal Service using the road to go to the Jaegers' house.

Roger Bloomberg testified that immediately after buying his property in 1973, he posted no trespassing signs and fenced his entire property with barbed wire to keep his animals in and others out. Roger and Carol Bloomberg both testified that the disputed road did not exist in 1973 as the Jaegers contend. Rather, it was developed in 1976 when the Bloombergs built their house. Roger denied that Edwin helped him build the road. Roger testified that between 1973 and 1976, he used another road referred to as "Kelly Lane" to access his property.

Roger testified that from the late 1970's to the early 1980's the Jaegers had animals on their property so they fenced in their property. Roger stated that the fence came across the disputed road so the Jaegers had no access to the Bloombergs' property during those years. Roger testified that from 1976 to 1985, he did not see the Jaegers use the disputed road, and he assumed the Jaegers used Kelly Lane or Christine Drive to access their property. Roger also testified that during those years he never saw anyone, such as the United States Postal Service or UPS, use the road to get to the Jaegers' house. He also testified that he never had a discussion with Edwin about permission to use the road during that period of time.

Carol testified that she observed the Jaegers using Kelly Lane and Christine Drive to access their property between 1976 and 1985. Carol also testified that during those years there were times in the winter months that the road could not be used. She testified that during those times, she and Roger used the alternate road to the south of the road at issue.

In the mid-1980's, the Bloombergs moved to California. During that time, they would occasionally return to their property in Nebraska. Roger and Carol testified that during the times they would return, the road at issue was in bad condition and could not be used. Roger and Carol both testified that when they moved back to Nebraska in 1990, the road needed so much repair work and maintenance that they did not do anything to it for some time and they used only the road to the south. The Bloombergs also testified that in 2002 there was a flood that caused the road at issue to wash out and become unusable again.

Roger testified that between 1990 and 2005, he never saw any service vehicles drive on the road to get to the Jaegers' property. On cross-examination, Roger testified that the Jaegers never used the road at issue between 1973 and 2010. He testified that he told them in 2010 that they could not use the road because they had no right to use it, and again stated that they never used it until 2010.

Carol Bloomberg testified that between 1980 and 1985 she was home most of the time because she was operating a dog kennel at that residence, and she never saw any service vehicles

use the disputed road to get to the Jaegers' house. Carol testified that in 2005, she saw one of the Jaegers' children working on the road. She stated that was the only time she saw the Jaegers working on the road. She also testified that she and Roger never had any conversations with the Jaegers.

On rebuttal, Donna testified that the Jaegers have used the road at issue to go to and from their home every day for over 40 years. She testified that they started getting mail delivery to their property in 1975 or 1976, and that Kelly Lane did not exist then. She also testified that there was never a barbed wire fence across the road or anything else restricting their access to the road. Edwin testified that Kelly Lane did not exist in the 1970's as the Bloombergs contend, and that they have been using the road at issue since shortly after building their house in 1973. Kurkowski testified that the Jaegers have been using the road at issue every day since 1979. He also testified that Kelly Lane did not exist until after 2002.

At the conclusion of trial, based on an agreement by the parties, the trial court viewed the property in question. Subsequently, the trial court entered an order finding that the Jaegers proved they had an access easement over the road on the Bloombergs' property under the theory of prescriptive easement. The court ruled against the Bloombergs on their counterclaims and found in favor of Kurkowski on his cross-complaint. Kurkowski is not a party in the present appeal.

## ASSIGNMENT OF ERROR

The Bloombergs assign that the trial court erred in finding that the Jaegers met their burden to establish an access easement under the theory of a prescriptive easement.

## STANDARD OF REVIEW

A suit to confirm a prescriptive easement is one grounded in the equitable jurisdiction of the district court and, on appeal to this court, is reviewed de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, this court will consider that the trial court observed the witnesses and accepted one version of the facts over another. *Teadtke v. Havranek*, 279 Neb. 284, 777 N.W.2d 810 (2010).

## ANALYSIS

The Bloombergs assign that the trial court erred in finding that the Jaegers proved the elements necessary for a prescriptive easement.

An easement is "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." *Feloney v. Baye*, 283 Neb. 972, 815 N.W.2d 160 (2012), quoting Black's Law Dictionary 585-86 (9th ed. 2009). Nebraska case law recognizes that a claimant may acquire an easement through prescription. *Feloney v. Baye, supra.* The use and enjoyment that will establish an easement through prescription are substantially the same in quality and characteristics as the adverse possession that will give title to real estate, but there are some differences between the two doctrines. *Id.*

Nebraska case law has previously noted that the law treats a claim of prescriptive right with disfavor. *Feloney v. Baye, supra.* The reasons are obvious - to allow a person to acquire

prescriptive rights over the lands of another is a harsh result for the burdened landowner. *Id.* And further, a prescriptive easement essentially rewards a trespasser, and grants the trespasser the right to use another's land without compensation. *Id.*

In prescriptive easement cases, the Nebraska Supreme Court has held that a party claiming a prescriptive easement must show that its use was exclusive, adverse, under a claim of right, continuous and uninterrupted, and open and notorious for the full 10-year prescriptive period. See *Feloney v. Baye, supra.*

In order for the Jaegers to prove a prescriptive easement, they had to establish each of the elements by clear, convincing, and satisfactory evidence. See *Teadtke v. Havranek, supra.*

The prevailing rule is that where a claimant has shown open, visible, continuous, and unmolested use of land for a period of time sufficient to acquire an easement by adverse user, the use will be presumed to be under claim of right. *Teadtke v. Havranek, supra.* If a person proves uninterrupted and open use for the necessary period without evidence to explain how the use began, the presumption is raised that the use is adverse and under claim of right, and the burden is on the owner of the land to show that the use was by license, agreement, or permission. *Id.* The presumption of adverse use and claim of right, when applicable, prevails unless it is overcome by a preponderance of the evidence. *Id.*

The word "exclusive" in reference to a prescriptive easement does not mean that there must be use only by one person, but, rather, means that the use cannot be dependent upon a similar right in others. *Teadtke v. Havranek, supra.* There was no evidence that the Jaegers use of the property was dependent on a similar right in others.

The Bloombergs contend that the Jaegers did not prove that their use of the road at issue was continuous and uninterrupted because the evidence showed that the Bloombergs had a barbed wire fence around their entire property and also showed that the road was in bad condition and impassible much of the time.

The Jaegers' evidence showed however, that they have used the road at issue to access their property consistently for well over 30 years at the time they filed their amended complaint, and that they have maintained the road over the years. The Jaegers' friends and neighbors, the Jaegers' children, and the children's friends, have all used the road at issue over the years to access the Jaegers' house. The evidence also showed that the Jaegers received mail, deliveries, garbage service, and emergency medical care through use of the road. Kurkowski's testimony supported the use claimed by the Jaegers. He testified that he had observed the Jaegers continually use the road since 1979.

The trial court found that based on the evidence and a view of the property at issue, that someone had been using the road regularly and for an extensive number of years, and since it was apparently not the Bloombergs, it concluded that it was the Jaegers. The court stated that it accepted the Jaegers' testimony as to their use of the road since 1973 and the extent of that use.

When credible evidence is in conflict on material issues of fact, the appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Homestead Estates Homeowners Assoc. v. Jones*, 278 Neb. 149, 768 N.W.2d 436 (2009). We give such deference to the trial court here, especially since the trial court had viewed the property at issue, and find the Jaegers' evidence as to their use of the road

more credible. The Jaegers' use of the road constitutes continuous and uninterrupted use, as well as open and notorious conduct.

Generally, once a claimant has shown open and notorious use over the 10-year prescriptive period, adverseness is presumed. *Feloney v. Baye, supra.* At that point, the landowner must present evidence showing that the use was permissive. *Id.*

The Bloombergs argue that the Jaegers testified that their use was permissive and therefore, they did not prove that their use was adverse and notorious. The Jaegers did not testify their use was permissive. They only testified that there was no discussion about their use of the road. Edwin testified that there was never any agreement or discussion about the use of the road, they just used it. Donna testified that she believed they had a right to use the road beginning in 1973 when they purchased their property. Travis testified that his family never asked the Bloombergs for permission to use the road, and the Bloombergs never told them that they could not use it. The Jaegers' evidence shows that they never asked for or received permission to use the road.

The Bloombergs' evidence does not establish that the Jaegers' use was permissive either. Roger testified that he never had a discussion with Edwin about permission to use the road between 1976 and 1985. He testified that there was never a discussion over the years. Carol testified that she and Roger never had any conversations with the Jaegers. Therefore, the Bloombergs did not provide sufficient evidence to overcome the presumption of adverse use and a claim of right.

We conclude that the Jaegers have shown by clear and convincing evidence that their use of the road at issue was exclusive, adverse, under the claim of right, continuous and uninterrupted, and open and notorious for the required ten year prescriptive period. Therefore, the Jaegers met their burden to establish an access easement under the theory of a prescriptive easement. The Bloombergs' assignment of error is without merit.

## CONCLUSION

We conclude that the trial court did not err in granting the Jaegers an access easement across the Bloombergs' property based upon the theory of prescriptive easement. The judgment of the trial court is affirmed in its entirety.

AFFIRMED.